**In re Thomas ADIE, Debtor.**

**Mary–Jo ADIE, Plaintiff,**

v.

**Thomas ADIE, Defendant.**

**Bankruptcy No. 95–2421 JEY.**
**Adv. No. 95–1237 JEY.**

United States Bankruptcy Court,
D. New Hampshire.

June 12, 1996.

Richard R. Erricola, Trustee, Sutton, MA.

## ORDER

JAMES E. YACOS, Chief Judge.

The Court conducted a trial on June 11, 1996 at which time extensive documentary evidence was received and oral testimony by both plaintiff and defendant regarding the sole question as to whether a $4,000 obligation under a promissory note executed in accordance with the marital divorce stipulation entered in October of 1994 payable one year later should be determined to be non-dischargeable under § 523(a)(5) or § 523(a)(15) of the Bankruptcy Code.

The obligation in question was in conjunction with the deeding of the plaintiff's interest in the marital home to the defendant who was to continue to live in the home with his son. The plaintiff was to move and live with a son and minor daughter under the divorce agreement.

At or about the date that the promissory note for the $4,000 became due the defendant filed the present chapter 7 bankruptcy petition. That petition lists total unsecured debt of approximately $160,000 although as developed during the hearing the actual exposure of the debtor was more in the vicinity of $45,000 to $50,000. That is true because one of the sizable debts, i.e., $122,000 listed regarding the Fleet Bank, was the total debt originally owing but that bank had been paid through a sale immediately prior to the bankruptcy and would not have a deficiency claim of more than approximately $10,000.

The first issue before the Court is whether the debt in question is non-dischargeable because it is in the nature of support or maintenance under § 523(a)(5) of the Bankruptcy Code. On that point, the Court concludes that the obligation in question is clearly property settlement and not support and therefore is dischargeable under § 523(a)(5). The entire divorce decree and marital settlement stipulation, if read together, provides for support in a separate section; provides that alimony is not presently awarded but maybe awarded in the future; and then in the provision in question with regard to the $4,000 clearly in my judgment deals with a property settlement agreement between the plaintiff and defendant as to the disposition of the marital home. Taking all that into account, I don't believe this is a case in which the Court could properly recharacterize the obligation as being in the nature of support and thus non-dischargeable under § 523(a)(5).

The further issue, however, is more controversial and that is whether notwithstanding the finding that the obligation in question is a property settlement obligation the Court nevertheless should determine the debt to be non-dischargeable under § 523(a)(15) of the Bankruptcy Code, which permits the Court to do that if it finds basically that either the debtor has the ability to pay the debt from income available or that discharging the debt would not result in a benefit to the debtor that outweighs the detrimental consequences to the ex-spouse.

On this second issue the Court has heard considerable discussion and testimony by the parties and has reviewed the documentary evidence submitted and finds on both of those alternative grounds that the plaintiff has failed to meet her burden on that contention[1]. I say that not because the plaintiff doesn't have some good arguments about

---

1. Although the statutory language is somewhat convoluted, I believe the proper interpretation is that the burden of proof in the sense of burden of persuasion is on the creditor seeking a nondischargeability determination under § 523(a)(15) of what would otherwise be a dischargeable debt. See *In re Butler*, 186 B.R. 371, 374–75 (Bankr. D.Vt.1995). Contra *In re Becker*, 185 B.R. 567 (Bankr.W.D.Mo.1995).

readjusting support and alimony, in view of the bankruptcy and the discharging of the $4,000 debt, but because this Court cannot really determine ability to repay or detrimental consequences in this case because this Court does not have the power that the state court has to readjust support and/or impose new alimony obligation to take into account the changed circumstances resulting from the wiping out of the $4,000 property settlement obligation in bankruptcy as well as the discharge of the debtor's other debts.

This case is somewhat unique in that the divorce decree itself preserved the power of the divorce court to award alimony depending on future changed circumstances of the parties. It also provides for support and there have been a number of hearings in the state court, and indeed will be additional hearings shortly, to determine the support obligation and any modification thereof. This Court in its decision in *In re Ellis,* 143 B.R. 796, 797 (Bankr.D.N.H.1992) pointed out the relevant interplay between the bankruptcy court and the marital courts in this context:

> "The issue essentially is which forum should determine the question of any change in the alimony support obligations of the ex-wife due to the changed circumstances that have affected both spouses since the original divorce decree. One of those changed circumstances of course is the filing of the bankruptcy petition by the husband. On balance I believe this matter should be permitted to go back to the state marital court for redetermination of the appropriate alimony and support level for the ex-wife."

While that case did not involve this exact procedural context the point is still well taken in the present case because I cannot determine finally the ability to pay and/or ultimate detriment and benefit without knowing what the state court will do in the scheduled hearings to consider adjusting the marital obligations of these parties. Bankruptcy simply is a "changed circumstance" that is not normally contemplated at the time of an entry of a divorce agreement and decree and

I think it is incumbent upon the state court to react to that changed circumstance and I'm sure it will so appropriately.

I cannot on this record make definitive findings about ability to repay the $4,000 without knowing how these variables will play out in the ongoing hearings in the state court. This is not a case in which it is crystal clear that the debtor has the ability from existing income to pay. For one thing, the debtor has recently been laid off from his long-time employment with Raytheon Company and while he is seeking additional employment and I believe will get it eventually, that is not a matter that is certain to occur so that this Court could make a finding that he can pay the $4,000 at any given point. The state court can react to changes in his situation when that court determines the current and continuing financial situation of not only the debtor but the plaintiff here, and the children involved, and can react appropriately [2].

■ I should add that there has been talk about contempt proceedings against the debtor which directly or indirectly may be bottomed on a contention by the plaintiff here that it was contempt for the debtor-defendant to have filed bankruptcy in the first place. That is not permissible under the law except as to a true criminal contempt proceeding. While motion practice for "contempt" in marital courts is normally a collection enforcement process it sometimes is considered by spouses embroiled in post-divorce litigation to be a club to be used to preclude another spouse from exercising his or her rights under the Federal Constitution and Federal Laws to avail themselves of the possibility of bankruptcy discharge.

I referred to this situation in a case of *In re Roussin,* 95 B.R. 270, 275 (Bankr.D.N.H. 1988) as follows:

> "In that regard, I believe that the state court will be aware that there are considerations akin to comity towards this Court as well, in that an individual has every right to file a bankruptcy petition. Any circumstances surrounding criminal con-

---

2. As I said during the hearing I have a camera that takes a "snap shot" whereas the state court

has a camera that takes "moving pictures" that are more appropriate to the facts of this case.

tempt for that action may take into account an individual's legal right to file bankruptcy. The bankruptcy petition is a fact, but it cannot be a ground, by itself, for a charge of criminal contempt. Compare 11 U.S.C. § 525 (governmental units shall not discriminate against a person solely because such person has been a debtor); *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) (state law may not have the effect of frustrating the discharge granted to a debtor)."

In the present case this bankruptcy in my judgment was not filed as an abuse of the bankruptcy process in that the debtor had substantial other debts unpaid which served as a basis for relief. To put it otherwise, this bankruptcy was not filed solely to avoid the $4,000 payment obligation and therefore the debtor was entitled to come to this Court as he has and to obtain a determination that property settlement obligations stemming from the divorce proceeding would be dischargeable.

Accordingly, final judgment will be entered in this adversary proceeding determining that the $4,000 obligation in question is a property settlement obligation in the marital proceeding which is dischargeable under § 523(a)(5) of the Bankruptcy Code and which has not been rendered non-dischargeable under § 523(a)(15) of the Bankruptcy Code.

DONE and ORDERED.

*FINAL JUDGMENT*

This proceeding having come before the Court on June 11, 1996 for trial and the Court having entered an order separately, it is accordingly

ORDERED ADJUDGED and DECREED as follows:

1. Judgment is entered in favor of defendant.

2. Each party shall bear its own fees and costs.

This is a core proceeding in accordance with 28 U.S.C. § 157(b) as to which this

Court has jurisdiction of the subject matter and the parties.

DONE and ORDERED.