**In re Keith GAGNE, Debtor.**

**Julie Gagne, Plaintiff,**

v.

**Keith Gagne, Defendant.**

**Bankruptcy No. 97–12818–MWV.**
**Adversary No. 97–1351–MWV.**

United States Bankruptcy Court,
D. New Hampshire.

June 26, 1998.

*Taylor v. Rupp (In re Taylor),* 133 F.3d 1336, 1338 (10th Cir.1998), *cert. denied,* 525 U.S. 873, 119 S.Ct. 172, 142 L.Ed.2d 140 (1998).

Geraldine Karonis, Assistant U.S. Trustee, Manchester, NH, for J. Christopher Marshall.

Grenville Clark, III, Gray, Wendell & Clark, P.C., Manchester, NH, for Keith Gagne.

Robert A. Zubkus, Law Office of Hanlon and Zubkus, Rochester, NH, for Julie Gagne.

## *MEMORANDUM OPINION*

MARK W. VAUGHN, Chief Judge.

The Court has before it the complaint of Julie Gagne ("Plaintiff") against Keith Gagne ("Debtor"), which requests the Court, pursuant to section 523(a)(15) of the Bankruptcy Code, except from the Debtor's discharge three debts that the Strafford County Superior Court ordered him to pay under the parties' divorce decree dated November 19, 1996. *See* Pl.'s Ex. 3. The Debtor responded that he has insufficient disposable income to pay these three debts. A one-half day trial was held on June 22, 1998, at which time the Court took this matter under advisement.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and § 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## DISCUSSION

The Debtor filed his bankruptcy petition on August 1, 1997. The Plaintiff, the former spouse of the Debtor, filed the within adversary proceeding on October 29, 1997, objecting to the Debtor's discharge of certain debts to which she remains jointly liable. On Schedule F of his petition, the Debtor listed these debts which form the basis of the Plaintiff's complaint: an AT & T Universal MasterCard for $1,387.13, a Fleet Bank MasterCard for $2,499.11, and a loan from Mark and Susan Aimes, the Plaintiff's sister and brother-in-law, for $2,500. The sum of these debts is $6,386.24. The Debtor also listed the Plaintiff on Schedule F of his bankruptcy petition for $6,500 for "[p]ossible liability for ex-spouse's debts arising from divorce

decree." The Plaintiff's complaint requests that this Court conclude that the Debtor has an ability to pay the approximately $6,500 owed on her behalf.[1] The Debtor received his discharge on November 12, 1997.

Section 523(a)(15) provides as follows:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15)(1997). This section was added to the Bankruptcy Code with the 1994 amendments. With regard to this section, Judge Conrad of Vermont states it best:

It has been said that one should never watch laws or sausage being made, and section 523(a)(15) of the Bankruptcy Code is no exception to that caution.

Section (a)(15) is a pernicious creature. Using it is equivalent to applying acupuncture without a license because it does not heal the emotional wounds from a divorce. Indeed, section (a)(15) is an intrusive invasion into the private lives of a former couple who had agreed in their divorce to separate forever. Section (a)(15) can be described as an impediment to the emotional fresh start in life that divorce may bring. It also can impede the fresh start of bankruptcy. The section, presumably, was enacted by Congress to fill in the gaps of § 523(a)(5) by protecting ex-spouses who pass through that section and are harmed by it. *In re Hill,* 184 B.R. 750, 752–53 (Bankr.N.D.Ill.1995) (*citing* 140 CONG. REC. H10752–1 (daily ed. Oct. 4, 1994)).

*Kessler v. Butler (In re Butler),* 186 B.R. 371, 372 (Bankr.D.Vt.1995).

In essence, in order for marital debts to be discharged, the Court must find either that a debtor does not have the ability to pay and reasonably maintain and support himself or herself, or that the benefit of the discharge to the debtor outweighs the detriment to the non-debtor spouse.

Courts have differed on the question of which party has the burden of proof on the above issues. Judge Yacos, in *Adie v. Adie (In re Adie),* 197 B.R. 8 n. 1 (Bankr.D.N.H.1996), indicated in a footnote that he believed the burden of proof is on the creditor. Other courts have found that the section creates a rebuttable presumption that the debts are excepted from discharge, shifting the burden of proof to the debtor. *In re Becker,* 185 B.R. 567, 569 (Bankr.W.D.Mo.1995). In the instant case, the Court found, and stated at trial, that the Plaintiff bore the burden of proof with one exception: the Debtor had the burden of proof under

---

**1.** At trial, the Plaintiff stated that the amount of the debts were as follows: Susan and Mark Aimes, approximately $2,300; AT & T Universal MasterCard, approximately $1,350; and Fleet Mastercard, approximately $2,600.

subsection (A) of section 523(a)(15) with regard to his *inability* to pay.

With regard to these three debts, the Plaintiff pays $29 a month without interest to Susan and Mark Aimes and $20 a month in interest only on the Fleet MasterCard. The Plaintiff stated that she expects the payments on the Fleet MasterCard to increase in September 1998, and that she would not be able to afford these payments. Finally, the Plaintiff testified that her most recent payment on the AT & T Universal MasterCard was a principal and interest payment of $55.

The Plaintiff's income from her position with Hussey Seating Company in North Berwick, Maine is $1,747.55 a month, and her expenses total $2,314 monthly. *See* Pl.'s Ex. 7. However, the Plaintiff testified that her car payment should be reduced by $11, and that her live-in boyfriend, who makes approximately $1,600 a month, pays one-half of the budgeted grocery bill and both the full cable and electricity expenses.[2] This reduces the Plaintiff's expenses to $2,116 a month. *See* Pl.'s Ex. 7. However, the Plaintiff, who has primary physical custody of the couple's child, testified she receives an additional $250 bi-weekly in child support from the Debtor, who is not in arrears. Therefore, the Plaintiff has disposable income of approximately $170.67 a month,[3] although the Plaintiff's payments of $20, $29 and $55 on these three debts are not reflected in this calculus.

The Debtor is employed as an electronics technician with Colonial–Life Mate.[4] Schedules I and J of the Debtor's bankruptcy petition list his monthly net wages as $1,547.50 and his monthly expenses as $1,372.02. However, the Debtor testified that the alimony payment listed on his petition is a bi-weekly rather than a monthly, payment. Regardless, the Court finds that the Debtor pays the Plaintiff $250 bi-weekly, based on the Plaintiff's own testimony and the December 1, 1997 Strafford County Superior Court Order requiring the Debtor to pay this amount. *See* Def.'s Ex. 110.

In addition, the Debtor testified to other expenses which were not listed on his petition. First he stated that he has attended school in the past and may in the future. The United States government, under the G.I. bill, only reimburses him approximately ninety percent of his tuition. Moreover, the Debtor's other expenses incumbent in attending school are not reimbursed. Second, the Debtor testified his rent has increased by $25 a month, and that he pays, pursuant to the divorce decree, one-half of the doctor bills for the parties' child as they arise.

However, the Debtor resides with his live-in girlfriend, which reduces his monthly expenses. In response to specific questions by the Plaintiff's counsel, the Debtor testified that his girlfriend pays fifty percent of the rent and utilities bills. *Compare* Def.'s Ex. 109 and Schedule J. Therefore, the Court finds that the Debtor's monthly expenses total approximately $1,627. In addition, the Debtor, perhaps because he was not asked, did not state whether his live-in girlfriend contributes her income to the household's food or other expenses. The Court also notes that

2. The Plaintiff testified that her boyfriend does not share rent expenses.

3. This figure is reached by adding an additional $500 (divided by 12 months) to the Plaintiff's income because she is paid $250 bi-weekly.

4. The Debtor testified that at the time of the parties' divorce, he earned considerably more working for Willie Brothers. His 1997 tax return shows his yearly gross income as $39,-

600. *See* Def.'s Ex. 113. Since that time, the Debtor left his job with Willie Brothers, which required a substantial amount of travel, for his current one in order to be closer to his child and attend school. His current gross salary is $27,500. The Debtor also testified that he briefly worked part-time with Colonial Village, Inc., but neither does so now nor intends to again because the hours strained his time available to attend school and work full-time for Colonial–Life Mate.

the Debtor reaffirmed his debt to Sears, received a $2,500 raise on December 1, 1997, and makes $3,000 more per year than the Plaintiff who retains sole physical custody of their child.

■ Based on the exhibits and testimony of both the Plaintiff and the Debtor, the Court finds that the Debtor neither has the current nor immediate ability in the future to repay all these three debts. However, the Debtor did not meet his burden of proof with respect to having an inability to pay on all three debts. Therefore, the Court, taking the somewhat "equitable middle ground," at least in part, finds that the Debtor does have the ability to pay one of them, namely the debt owed on the AT & T Universal MasterCard, on which the Plaintiff currently pays $20 a month, and which she expects will increase.[5] *See Comisky v. Comisky, II (In re Comisky, II)*, 183 B.R. 883 (Bankr. N.D.Cal.1995) (the court analogized section 523(a)(8) to section 523(a)(15) and fashioned the equitable remedy of allowing a partial discharge) (citing *In re Gammoh*, 174 B.R. 707 (Bankr.N.D.Ohio 1994), in which Bankruptcy Judge Speer held that "where the debtor would suffer undue hardship if forced to pay all of the student loan, but could pay part of it, the court has discretion to declare only part of the debt nondischargeable"); *accord McGinnis v. McGinnis (In re McGinnis)*, 194 B.R. 917, 921 (Bankr.N.D.Ala.1996) ("[T]his Court refuses to take an "all or nothing" approach because the same is not mandated by section 523(a)(15)."). Therefore, the Debtor's debt to the Plaintiff on this AT & T Universal MasterCard is hereby excepted from discharge.

This does not end the Court's inquiry, however. The parties both testified at trial that were either to shoulder the weight of these debts, such weight would import an undue hardship; further, the Plaintiff alleged that discharging these debts would reap a windfall to the Debtor. To revisit the exact language of the statute, the provision reads that a debtor's debt should not be excepted from discharge if "discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a ... former spouse." § 523(a)(15)(B). Without adding the two outstanding debts, the effect that excepting from discharge the AT & T Universal MasterCard would have on the parties' disposable incomes is this: the Plaintiff's disposable income remains at $170.67,[6] and the Debtor's disposable income is a negative $99.50.[7]

The Court also notes that the Debtor, but not the Plaintiff, testified that he has received a raise, and he has attended classes in the past and intends to do so in the future; in addition, the Court reasserts its earlier finding that the Debtor has reaffirmed a debt and makes $3,000 more per year than the Plaintiff who cares for their child. These facts are not those which the Court takes lightly in its decision today. Therefore, the Plaintiff's disposable income would be $95.67 per month were she to shoulder these two debts. To require the Debtor to shoulder these debts would be to reduce his disposable income to a

---

5. The Court recognizes that other courts have declined to wield their inherent equitable powers in fashioning this sort of remedy. *See Taylor v. Taylor*, 199 B.R. 37 n. 5 (N.D.Ill. 1996) (stating in footnote 5 that most courts use the "all or nothing" approach). However, the circumstances of this case are unique: both parties would suffer a hardship if the Court ordered the debt fully excepted or not excepted from discharge. This would hardly effect the purpose, to what extent courts can ascertain, lies behind Congress' enactment of section 523(a)(15).

6. This number is derived as follows: $1,747.55 (monthly income) plus $500 (child support), minus expenses of $2116, plus an extra $41.67, which represents the monthly pro-rata income since the Plaintiff is paid $250 bi-weekly (she receives an extra $500 yearly more than she would were she paid monthly).

7. This number is derived as follows: $1,547.50 (monthly income) minus $1,627, plus the $20 monthly payment excepted from discharge due AT & T Universal MasterCard.

negative $163.55. This amount considers the full principal and interest payment of $55, which the Plaintiff is voluntarily paying on the Fleet MasterCard.

■ This Court realizes that budgets change with the ebb and flow of monthly expenditures, and that both parties to this adversary proceeding play their numbers games close to the line. Where the monthly disposable income hovers around zero for both parties and leaves little room for error, a partial equitable remedy is in order. The Plaintiff, in attempting to prove her greater hardship, testified at trial that she received clothes for her son from a friend at work, and is unsure whether her friend's charity will continue. However, the Court notes that her $250 bi-weekly child support payment, which ostensibly should cover these items, is what the Strafford County Superior Court decided was the sufficient amount to receive from Mr. Gagne.

■ Excepting the two debts to Fleet MasterCard and Mark and Susan Aimes from discharge would not "result in a benefit to the debtor that outweighs the detrimental consequences" to the Plaintiff. § 523(a)(15)(B). Rather, allowing the Debtor to discharge these two debts gives the Debtor the breathing room and the fresh start that is the foundation of the Bankruptcy Code. Section 523(a)(15) is, indeed, a "pernicious creature," and this Court, at least, will not use it to "impede the fresh start of bankruptcy," *Kessler,* 186 B.R. at 372, for this Debtor. Therefore, for the above reasons, the Court orders that only the AT & T Universal MasterCard is excepted from discharge.[8] In addition, to the extent that the parties requested, both parties' requests for attorneys' fees and costs are denied.

This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Proce-

dure 7052. The Court will issue a separate final judgment consistent with this opinion.

---

8. The Court notes that the discharged debt totals $4,900, and the debt excepted from discharge today is $1,350.