In re William R. KONICK, Debtor.

Joanne C. Hastings, f/k/a Joanne Konick, Plaintiff–Appellee,

v.

William R. Konick, Defendant–Appellant.

BAP No. MB 98–034.

United States Bankruptcy Appellate Panel of the First Circuit.

July 14, 1999.

Jonathan Levin, Edmond A. Allcock, Garrity, Levin and Muir, Boston, MA, for defendant-appellant.

Lynn F. Riley, Riley & Solomon LLP, Cambridge, MA, for plaintiff-appellee.

Before GOODMAN, LAMOUTTE and CARLO, U.S. Bankruptcy Judges.

PER CURIAM.

Mr. Konick, the Defendant/Appellant, challenges an order issued by the United States Bankruptcy Court finding that his property settlement obligations to Ms. Hastings, Plaintiff/Appellee, as a consequence of their Separation Agreement and subsequent divorce, are nondischargeable. We affirm the bankruptcy court's judgment.

## JURISDICTION

The Bankruptcy Appellate Panel has jurisdiction to review final decisions from the United States Bankruptcy Court pursuant to 28 U.S.C. § 158(b)(1). *See also Sanford Institution for Savings v. Gallo*, 156 F.3d 71, 74 (1st Cir.1998). The bankruptcy court's finding of facts may not be disturbed unless clearly erroneous, Fed. R.Bankr.P. 8013, and "[t]he bankruptcy court's legal conclusions, drawn from the facts so found, are reviewed de novo." *Palmacci v. Umpierrez*, 121 F.3d 781, 785 (1st Cir.1997).

## BACKGROUND

The facts are undisputed, therefore, we recite only those necessary to set the stage for this appeal. In 1993, Mr. Konick and Ms. Hastings entered into a Separation Agreement in anticipation of divorce which provided that Ms. Hastings have physical custody of their two minor children, that Mr. Konick pay weekly child support and wherein the parties agreed to a division of marital property. Pursuant to the Separation Agreement, later incorporated into the Judgment of Divorce, Ms. Hastings transferred her interest in the real property held by her and Mr. Konick as tenants

by the entirety in exchange for a promissory note for $15,000 to be paid by Mr. Konick within 15 years in annual installments of not less than $1,000. In addition, they agreed that Ms. Hastings was entitled to a 50% share of Mr. Konick's pension which was to be paid in annual increments of not less than $1,000 until an amount representing half of the present value of the pension was paid to Ms. Hastings. At some later point, Mr. Konick failed to meet these obligations and Ms. Hastings pursued legal action in the Commonwealth of Massachusetts Family and Probate Court Department (Probate Court). Among other actions taken, in May, 1995, the Probate Court found Mr. Konick in contempt of court and ordered compliance with the stipulation reached by the parties. The stipulation required that Mr. Konick pay Ms. Hastings weekly an amount equal to child support and an additional $40 toward the property settlement debt. In addition, the Probate Court ordered that Mr. Konick's weekly financial obligations to Ms. Hastings be paid through wage assignment, which continues to this date.[1]

In August, 1995, Mr. Konick filed a voluntary petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code. The Debtor listed the property settlement debts to Ms. Hastings as general unsecured claims and Ms. Hastings initiated an adversary proceeding objecting to their discharge. At the conclusion of an evidentiary hearing held in February, 1998, the bankruptcy court ruled that Mr. Konick's property settlement obligations were not dischargeable under 11 U.S.C. § 523(a)(15).

In this appeal Mr. Konick challenges the bankruptcy court's ruling on several grounds. He first asserts that the bank-

ruptcy court's finding of nondischargeability was inconsistent with its findings of fact. Alternatively, Mr. Konick argues that the bankruptcy court applied the wrong legal standard when considering the potential future earning capabilities of the parties.[2] Each will be discussed in turn.

## DISCUSSION

Pursuant to the Bankruptcy Reform Act of 1994, debts arising from dissolution of a marital partnership other than alimony, child support or maintenance, are not dischargeable except in specific circumstances as follows:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . . .

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of debtor or a dependent of the debtor and, if the debtor is engaged in business, for payment of expenditures necessary for the continuation, preservation, and operation of such a business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of debtor; ...

11 U.S.C. § 523(a)(15).[3] In accordance with the language of the statute, in order

---

1. The only change which has occurred is the addition of $40 in weekly child support payments subsequently ordered by the Probate Court.

2. Although the Appellant lists three issues on appeal, the text of the brief indicates that the

second and third issue are merged into a single issue.

3. In a recent First Circuit case, the legislative history of this section was highlighted:

for the debt to be excepted from discharge, the nondebtor spouse must show that the debt arises from a separation agreement. The nondebtor former spouse must then show that debtor has the ability to pay such debt, and that the detrimental consequences to the nondebtor former spouse are greater than the benefits resulting to debtor from his discharge of such debt. *See In re Brasslett (Brasslett v. Brasslett)*, 233 B.R. 177, 182 (Bankr. D.Me.1999); *Marquis v. Marquis (In re Marquis)*, 203 B.R. 844, 850 & n. 11 (Bankr.D.Me.1997); *Soforenko v. Soforenko (In re Soforenko)*, 203 B.R. 853, 863 (Bankr.D.Mass.1997); *In re Straub (Straub v. Straub)*, 192 B.R. 522, 527–28 (Bankr.D.N.D.1996); and *Kessler v. Butler (In re Butler)*, 186 B.R. 371, 373 (Bankr. D.Vt.1995).

█ As plaintiff, Ms. Hastings bears the ultimate burden of proof with respect to each element, *In re Brasslett*, 233 B.R. at 182; *In re Marquis*, 203 B.R. at 852; *Adie v. Adie (In re Adie)*, 197 B.R. 8, 9 n. 1 (Bankr.D.N.H.1996), and she must prove her case by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

## A. Ability to Pay

█ At trial, the bankruptcy court heard the testimony of both the Debtor and Ms. Hastings. The court made the following findings and conclusions:[4]

> This section is intended to provide greater protection for alimony, maintenance, and support obligations owing to a spouse, former spouse, or child of a debtor in bankruptcy...
> [Section 523(a)(15)] adds a new exception to discharge for some debts that are not in the nature of alimony, maintenance or support. In some instances, divorcing spouses have agreed to make payments of marital debts, holding the other spouse harmless from those debts, in reduction for alimony payments. In other cases, spouses have agreed to lower alimony based on a larger property settlement. If such "hold harmless" and property settlement obligations are not found to be in the nature of alimony, maintenance, or support, they are dis-

I think this is a very—I'm certain it was a very difficult trial for the plaintiff and the defendant. I think both husband and wife testified truthfully and honestly, and I think that the reality of the situation is that both parties are financially in very, very strained circumstances. The testimony of the wife was that she earned between [$]7[,000] and $12,000 in 1993, 1994, and 1995, but that she earned far less in 1996 and 1997. She lives with her parents and the three children and receives child support from both the defendant and the third child's father.

Certainly, the husband has greater earning potential if not greater earnings today. Although he currently earns only approximately $511 per week and is in very difficult financial circumstances himself, he has in the recent past earned as much as $40,000 per year. The wife, however, depends on the generosity of her parents for a roof over [her] head and the heads of her children, and for child care assistance.

So I say this is a difficult finding—this has been a difficult trial, I'm sure, on both parties because I think both parties are in very financial—very difficult strained financial circumstances, and it's clear that they're both trying the best they can, given the circumstances. But part of my duty today is to look at the

> chargeable under current law. The nondebtor spouse may be saddled with substantial debt and little or no alimony or support. This section will make such obligations nondischargeable.
> *See Macy v. Macy*, 114 F.3d 1, 3 (1st Cir. 1997), *quoting* H.R.Rep. No. 103–835 at § 304 p. 54 1994 U.S.Code Cong. & Admin.News at pp. 3340, 3363.

4. Our review is restricted to that portion of the transcript which contains the court's findings and conclusions because that is all the parties submitted. As such, we conclude that the parties do not dispute the court's findings vis-a-vis the evidence presented.

situation today and determine what earning potential [there] is.

Today the husband, although in difficult circumstances, will be capable of contributing more money in the future, and that's an issue that is *going to have to be left to the wisdom of the Probate Court because it's clear that based on what the husband—based on the schedule of earnings the husband gave, that he's in very straightened circumstances at this point.* Unfortunately, Congress ... compels me to say, "Well, who is worse off?" And as—*and in this case both parties are in a terrible position, in an unenviable position, and one that hopefully will change over time as the children grow up, and hopefully life will be a little easier.* But here I find that discharging the indebtedness under the $15,000 obligation and under the pension plan would cause a significant detriment to the spouse and to the two children of the marriage.

So although I recognize that Mr. Konick cannot pay anymore today, based on the numbers that I see, it may be the case that down the road things will—the financial future will brighten and he'll be able to make future payments.

So for that reason I'm going to enter a judgment in favor of plaintiff under [§ ] 523(a)(15), but I'm going to leave it to the Probate Court to determine what amount going forward is appropriate, and that's something that the parties can address to the Probate Court.

Appellant's Appendix, pp. 59–61.

Mr. Konick first asserts that the bankruptcy court's ruling was inconsistent with its findings of fact highlighting two partial sentences from the findings made by the court at the completion of the trial: **"he's in very straightened circumstances ..."** and **"[s]o although I recognize that Mr. Konick cannot pay anymore today ..."**. Mr. Konick's argument goes something like this: although the bankruptcy court

found him unable to pay the claim, the court, nonetheless, failed to discharge the claim. Thus, the ruling is inconsistent and should be reversed. We are not convinced.

The first quote simply recognizes the Debtor's dire financial situation and is not a conclusive statement as to the Debtor's financial ability to continue payment of the claim. The second excerpt, although more definitive, is incomplete and can only be properly understood when considered in the context of the order. While a reading of the entire paragraph refers to Mr. Konick's ability to pay, the court is focused on the terms of payment, for example, whether the Debtor has the ability to pay the claim in annual $2,000 installments as agreed or in a lump sum or whether he should continue repayment in $40 weekly installments as ordered by the Probate Court. As is clear from the following sentences, rather than finding that Mr. Konick was not able to pay the claim, the bankruptcy court considered the current arrangement and decided that the Probate Court's mandate should be left intact and any future changes should be addressed in that forum.[5]

■ It is proper to use the disposable income test to determine Mr. Konick's ability to pay. *In re Brasslett,* 233 B.R. at 183; *Dressler v. Dressler (In re Dressler),* 194 B.R. 290, 304 (Bankr.D.R.I.1996). Applying this test, we conclude that the bankruptcy court properly considered whether Mr. Konick had funds available to pay his obligation to Ms. Hastings after payment of his reasonable expenses. *In re Dressler,* 194 B.R. at 304. The bankruptcy court properly considered whether Mr. Konick " 'could make reasonable payments on the debt from his disposable income.' " *In re Brasslett,* 233 B.R. at 183 (*quoting Gamble v. Gamble (In re Gamble),* 143 F.3d 223, 226 (5th Cir.1998)).

---

**5.** When considering the full text of the order, it is apparent that the bankruptcy court's find- ing is more accurately reflected when "anymore" is transcribed as "any more".

While there is no dispute as to the severity of Mr. Konick's financial circumstances, during trial, Mr. Konick entered into evidence a schedule of income and expenses indicating that he currently has sufficient resources to continue to pay the claim in $40 weekly increments as ordered by the Probate Court, as he had done for nearly three years. Appellee's Supplemental Appendix, p. 7. The income and expense statement prepared by Mr. Konick indicates a weekly shortfall of $15.58, however, this takes into account a $20.00 miscellaneous expense. Appellee's Supplemental Appendix, p. 7. Adopting the "disposable income" test, the end result is inevitable: Mr. Konick has sufficient financial resources to pay the obligation. *See Collins v. Hesson (In re Hesson)*, 190 B.R. 229, 237 (Bankr.D.Md.1995).

The record before us is devoid of any assertion, supportive evidence, consideration or finding that Mr. Konick was financially unable to continue payment of the claim under the terms of the Probate Court order. Mr. Konick's defense that he is financially unable to continue making the $40 per week payments, was not set forth in his answer to the complaint nor was it presented at trial for the bankruptcy court's consideration. Mr. Konick merely lists it in the joint pretrial order as a contested fact. Appellant's Appendix, pp. 46–50; 52–53; 55–62. Considering the entire order of the bankruptcy court, we reject Konick's argument that the bankruptcy court's order is inconsistent.

■ Mr. Konick's second challenge of error fares no better. He asserts that the bankruptcy court improperly considered his future earning capabilities when determining whether the debt is dischargeable pursuant to 11 U.S.C. § 523(a)(15)(B). A view of the case law shows that courts uniformly take into account the debtor's current financial condition, i.e., at the time of trial, when determining whether a claim

should be discharged under § 523(a)(15). *See, e.g., Jodoin v. Samayoa (In re Jodoin)*, 209 B.R. 132, 142 (9th Cir. BAP 1997); *In re Brasslett*, 233 B.R. at 183; *In re Dressler*, 194 B.R. at 300–01; *Gantz v. Gantz (In re Gantz)*, 192 B.R. 932, 934–35 (Bankr.N.D.Ill.1996); *In re Hesson*, 190 B.R. at 238. In addition, courts may consider the debtor's future earning capabilities and long-term financial prospects, particularly where the claim is to be paid incrementally over a period of time. *See, e.g., Wolfe v. McCartin (In re McCartin)*, 204 B.R. 647, 654 (Bankr.D.Mass.1996) *Johnston v. Henson (In re Henson)*, 197 B.R. 299, 303–04 (Bankr.E.D.Ark.1996); *In re Straub*, 192 B.R. at 528. " 'A court may look to a debtor's prior employment, future employment opportunities, and health status to determine the future earning potential of the Debtor.' " *In re Brasslett*, 233 B.R. at 184 (*quoting Hart v. Molino (In re Molino)*, 225 B.R. 904, 908 (6th Cir. BAP 1998)).

**B. Balancing Benefit and Detriment**

■ The bankruptcy court took into account Mr. Konick's past earnings and future earning capabilities, as well as Mr. Konick's current financial condition and balanced it against Ms. Hastings'. The uncontested facts show that Mr. Konick works full-time and generates enough income to meet all necessary expenses including weekly child support payments and a $40 weekly payment toward the property settlement claim. Ms. Hastings, on the other hand, is responsible for the physical custody of three minor children,[6] works only part-time and relies on the assistance of her parents who allow the family to reside in their home and who provide child care. The court balanced the hardship and concluded that even though each parent is in an "unenviable position", Ms. Hastings does not have sufficient income to even meet the family's minimal needs.

**6.** The record reflects that Ms. Hastings also receives child support payments from the fa-

ther of the third minor in her custody.

**530**

Therefore, the harm caused by the discharge of the claim to Ms. Hastings and Debtor's two minor children would be far greater than any benefit to Mr. Konick.

### CONCLUSION

The record before us shows that the bankruptcy court thoughtfully and thoroughly reviewed the evidence and, having considered the financial difficulties of both Mr. Konick and Ms. Hastings, properly held the claim nondischargeable. Accordingly, we AFFIRM the bankruptcy court's decision in all aspects. Costs to Appellee.

**SO ORDERED.**