**In re Chuck L. HADLEY, Debtor.**

**Shelley Garrity, Plaintiff,**

v.

**Chuck L. Hadley, Defendant.**

**Bankruptcy No. 98–13834–JMD.
Adversary No. 99–1008–JMD.**

United States Bankruptcy Court,
D. New Hampshire.

Sept. 7, 1999.

Bruce D. Simpson, Dublin, NH, for plaintiff.

Chuck L. Hadley, debtor pro se.

## MEMORANDUM OPINION

J. MICHEAL DEASY, Bankruptcy Judge.

### I. BACKGROUND

Before the Court is a complaint filed by Shelley Garrity ("Plaintiff") against Chuck L. Hadley ("Debtor") objecting to the dischargeability of a debt, pursuant to 11 U.S.C. § 523(a)(15).[1] A trial was held concerning this matter on August 27, 1999, at which time both parties testified and presented documentary evidence regarding their financial status. The facts of this proceeding are straightforward and the legal issues are narrow. The parties, formerly husband and wife, were divorced on January 29, 1998 by order of the Hillsborough County Superior Court. In connection with the divorce, the Superior Court ordered, *inter alia,* that the Debtor "shall be responsible for ... and shall indemnify and hold [the Plaintiff] harmless therefrom" a First Union, now Providian, joint credit card debt in the amount of $2,418.44. *See* Ex. 1, Permanent Stipulation (hereinafter "Divorce Order") ¶ 17. The Debtor filed for bankruptcy under

---

1. Unless otherwise noted, all section references hereinafter are to Title 11 of the United States Code.

Chapter 7 on October 7, 1998 and listed the Providian debt on his Schedule F. The Debtor received a discharge on January 27, 1999. The Plaintiff argues that the Debtor's obligations concerning this debt, as viewed through the lens of the Divorce Order, should not be dischargeable pursuant to § 523(a)(15).

The Court has jurisdiction of this subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. DISCUSSION

### A. The Debt at Issue

As a threshold matter, and to avoid confusion, it is important to precisely identify the debt at issue. The Debtor's obligation concerning the Providian debt has been discharged vis-a-vis Providian. That obligation is not at issue. The debt at issue concerns the Debtor's obligation to indemnify the Plaintiff should the latter pay the Providian debt, an obligation that arises from the explicit terms of the Divorce Order. That debt will not arise unless and until the Plaintiff satisfies the Providian debt. Until that time, if it ever comes to pass,[2] the Debtor is under no obligation to recompense the Plaintiff with respect to the Providian debt.

### B. Section 523(a)(15)

█ The Plaintiff grounds her complaint solely within § 523(a)(15). Section

523(a)(15) provides that a debtor will not be discharged from a debt when the debt is:

> not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
>
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
>
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor....

11 U.S.C. § 523(a)(15). Section 523(a)(15), from a linguistic perspective, is nettlesome at best. Its use of multiple negatives yields a semantic maze. Clarity, however, may be found through close examination. Section 523(a)(15) begins by providing that all debts arising from a divorce decree or separation agreement are not dischargeable, provided they are not debts that fall within the purview of § 523(a)(5). Section 523(a)(5) excepts from discharge debts that are in the nature of alimony or support. Therefore, as a general rule, marital

---

**2.** There is a question as to whether the Plaintiff is under any current obligation regarding the Providian debt. At the trial, the Debtor offered a document authored by his divorce attorney stating that the attorney had spoken with a customer service representative of Providian, who stated that it is Providian's policy to retire a joint account as to both account holders when one account holder files for bankruptcy. *See* Ex. 103, Addendum to Status Report on Bankruptcy Matter dated June 15, 1999. Due to the hearsay nature of this

evidence, the Court did not admit the document for its truth, but rather solely for the purpose of showing what the Providian customer service representative told the Debtor's divorce attorney. In addition, the Plaintiff testified that she has not been contacted by Providian since March of this year. Accordingly, it is unclear whether the Plaintiff is under any current compulsion to satisfy the Providian debt. This uncertainty does not affect the Court's analysis.

debts in the nature of alimony or support are governed by § 523(a)(5), whereas marital debts in the nature of property settlements fall under § 523(a)(15). *See* 4 King et al., *Collier on Bankruptcy* ¶ 523.11[5] (15th rev. ed.1998). The parties agree that the debt at issue arose out of a divorce decree and that it constituted a property settlement. *See* Plaintiff's Complaint and Debtor's Answer. Accordingly, the threshold requirements of § 523(a)(15) are satisfied. Once these initial requirements are met, § 523(a)(15) presumes the relevant debt to be nondischargeable, unless either one of two conditions is shown to exist: (A) the debtor is unable to pay the debt; or (B) the benefits of a discharge to the debtor outweigh the detrimental effects of such a discharge on a spouse, former spouse, or child. *See Shea v. Shea (In re Shea)*, 221 B.R. 491, 499 (Bankr. D.Minn.1998). Thus, if either of these conditions can be shown to exist, then the relevant debt is dischargeable. Viewed from the Plaintiff's perspective, both of these conditions must be shown not to exist for the debt to remain nondischargeable (i.e., it must be shown that the debtor is able to pay the debt and that the detrimental effects of the discharge to the spouse, former spouse, or child outweigh the benefit to the debtor). For purposes of §§ 523(a)(15)(A) and (B), the financial ability and financial circumstances of the parties are analyzed as of the time of trial. See *Konick v. Konick (In re Konick)*, 236 B.R. 524, 529–530 (1st Cir. BAP 1999); *Dressler v. Dressler (In re Dressler)*, 194 B.R. 290, 300 (Bankr.D.R.I.1996) ("Unlike § 523(a)(5)'s 'rear view mirror' analysis, § 523(a)(15) instructs us to look out the windows. It calls for a 'current circumstances' review of non-support divorce obligations and the consequences of discharge upon them.").

### C. The Burden of Proof

■ The issue of who bears the burden of proof with respect to § 523(a)(15) has engendered divergent views among the courts. A majority of courts holds that § 523(a)(15) requires a bifurcated approach to the burden of proof question. These courts generally hold that the creditor has the burden of proving that the threshold requirements of § 523(a)(15) are satisfied (i.e., that the debt arose out of a divorce decree or separation agreement and that it is not governed by § 523(a)(5)) and the debtor has the burden of proving either that he or she does not have the ability to pay or that the benefit of discharge outweighs the detriment to the spouse, former spouse, or child. *See, e.g., In re Crosswhite*, 148 F.3d 879, 884–87 (7th Cir.1998); *Gamble v. Gamble (In re Gamble)*, 143 F.3d 223, 226 (5th Cir.1998) (stating that this is the majority position); *Wolfe v. McCartin (In re McCartin)*, 204 B.R. 647, 653–54 (Bankr.D.Mass.1996). In reaching its bifurcated burden of proof position, the majority focuses on the structural similarity between § 523(a)(15) and § 523(a)(8), which excepts student loan obligations from discharge "unless excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents...." § 523(a)(8). The majority finds interpretive significance in the similar "unless" language contained in the two provisions and thus concludes that, because most courts hold that the debtor bears the burden of proving undue hardship in the context of § 523(a)(8), the debtor bears the burden of proving §§ 523(a)(15)(A) or (B). *See McCartin*, 204 B.R. at 654. The minority view, on the other hand, does not bifurcate the burden. Instead, it simply holds that the creditor bears the burden of proving all elements of a § 523(a)(15) claim. *See, e.g., Konick*, 236 B.R. at 526–527; *Marquis v. Marquis (In re Marquis)*, 203 B.R. 844, 852 (Bankr.D.Me.1997); *Dressler*, 194 B.R. at 303–04; *Kessler v. Butler (In re Butler)*, 186 B.R. 371, 374 (Bankr.D.Vt.1995). These courts are not convinced by the argument that § 523(a)(15) is analogous to § 523(a)(8) and instead conclude that the two sections are conceptually dissimilar, relying in part on the fact that § 523(a)(15) is brought to life by the creditor, whereas

§ 523(a)(8) is generally initiated by the debtor. *See Dressler,* 194 B.R. at 303; *Butler,* 186 B.R. at 374. Both the majority and the minority generally focus on which party bears the "burden of proof." The Court finds that, in the context of § 523(a)(15), the focus on the burden of proof should be more precise.

When the term "burden of proof" is dissected, two distinct concepts emerge. The term "burden of proof" includes both the burden of production and the burden of persuasion. *See Universal Electronics, Inc. v. United States,* 112 F.3d 488, 492 (Fed.Cir.1997); *Stone v. Stone (In re Stone),* 199 B.R. 753, 759 (Bankr.N.D.Ala. 1996) (stating that the burden of proof encompasses both the burden of production and the burden of persuasion). The burden of production is met when a party presents enough evidence to make out a *prima facie* case. *See Black's Law Dictionary* 178 (5th ed.1979). In other words, the burden is satisfied when enough evidence is presented so that a reasonable person *could* infer the existence of the fact to be proven. *See* Strong et al., *McCormick on Evidence* 572 (4th ed.1992). If the burden is not met, the party bearing it will suffer an adverse ruling on the relevant issue. *See id.* at 568. The burden of persuasion, on the other hand, is a higher one and requires enough evidence to persuade the trier of fact that the alleged fact is true by the relevant evidentiary margin. *See id.; Black's Law Dictionary* at 178.

This Court agrees with the minority position, insofar that it holds that the creditor bears the burden of persuasion regarding all elements of a § 523(a)(15) claim. Sections 523(a)(15) and 523(a)(8) are indeed two different animals. *See Dressler,* 194 B.R. at 303; *Butler,* 186 B.R. at 374. The Court takes the position, however, that bifurcating the burden of persuasion and the burden of production is appropriate with respect to § 523(a)(15)(A). As between the debtor and the creditor, the former is in a better position to provide evidence concerning his or her inability to pay. *See Crosswhite,* 148 F.3d at 885 ("Certainly the debtor is most able to make the showing, under subpart (A), that he cannot pay the debt."). Although this point does not appear compelling enough to shift the burden of persuasion, the Court finds that it warrants placing the burden of production on the debtor. Accordingly, the Court concludes that the debtor bears the burden of production regarding § 523(a)(15)(A), while the creditor bears the burden of production and persuasion on all other elements of § 523(a)(15) and bears the ultimate burden of persuasion with respect to § 523(a)(15)(A). The Court believes that this position is in accord with, and harmonizes, the minority view as expressed by certain courts within this circuit. *See Adie v. Adie (In re Adie),* 197 B.R. 8, 9 n. 1 (Bankr.D.N.H.1996) ("I believe the proper interpretation is that the burden of proof *in the sense of burden of persuasion* is on the creditor seeking a nondischargeability determination under § 523(a)(15)....") (emphasis added); *Konick,* 236 B.R. at 526–527 ("[The plaintiff] bears the *ultimate* burden of proof with respect to each element [of § 523(a)(15) ]" (citing *Adie,* 197 B.R. at 9 n. 1)) (emphasis added). *See also Gagne v. Gagne (In re Gagne),* Bk. No. 97–12818–MWV, Adv. No. 97–1351–MWV (Bankr.D.N.H. June 26, 1998) (stating that the plaintiff bears the burden of proof as to all elements of § 523(a)(15) except § 523(a)(15)(A), which must be borne by the debtor).

### D. The Debtor's Ability to Pay

The Court finds that the Plaintiff has cleared the § 523(a)(15)(A) hurdle by persuading the Court that the Debtor is able to pay the debt at issue. Many courts conclude that the disposable income test, as defined by § 1325(b)(2), is an appropriate way to analyze the § 523(a)(15)(A) question of whether the debtor is able to pay. *See Konick,* 236 B.R. at 528–529 ("It is proper to use the disposable income test to determine [the debtor's] ability to

pay."); *Brasslett v. Brasslett (In re Brasslett)*, 233 B.R. 177, 183 (Bankr.D.Me. 1999); *Dressler*, 194 B.R. at 304.

■ The Debtor testified at the trial that his net base income for a forty-hour week equals $397.00, which reflects his income after various deductions including a nondischargeable monthly child support obligation of $566.00 to the Plaintiff. He further testified that, on average, he receives overtime pay for 10 to 12 hours per month at a rate of $18.26 per hour. A financial affidavit offered by the Debtor indicates that he receives overtime pay for roughly 13.6 hours per month.[3] *See* Ex. 101, Financial Affidavit of Chuck L. Hadley dated August 26, 1999. Based on this evidence, the Court concludes that the Debtor receives, on average, 12 hours worth of overtime per month, which yields additional gross monthly income of $219.12 and additional monthly net income of approximately $164.34. The Debtor also testified that his current wife receives a net weekly income of $300.00. It is appropriate to include the income of a debtor's current spouse in performing the § 523(a)(15) analysis. *See, e.g., Shea*, 221 B.R. at 499; *Brasslett*, 233 B.R. at 184; *Halper v. Halper (In re Halper)*, 213 B.R. 279, 283 (Bankr.D.N.J.1997) ("In applying § 523(a)(15)(A), most courts have held that a debtor's new spouse's finances should be considered as part of a determination of the debtor's ability to pay."). When the Debtor's net weekly income and his current spouse's net weekly income are converted to a monthly figure and added to the Debtor's average monthly overtime pay, the Debtor's monthly income equals $3,161.44.[4] However, the Debtor testified that his child support obligation to the Plaintiff has been modified so that his monthly child support deduction has been increased to $908.00, or by $342.00 per month. Accordingly, the Court concludes that, for purposes of applying the disposable income test, the Debtor's net monthly income equals $2,819.44.[5]

■ The Court finds that the Debtor's total monthly expenses are as outlined in Exhibit A to this opinion. These figures are derived from the financial affidavit provided by the Debtor, as further explained by his testimony at the trial. *See* Ex. 101, Financial Affidavit of Chuck L. Hadley dated August 26, 1999. Some of the expenses listed on the Debtor's financial affidavit (e.g., federal income tax and health insurance) are not included in Exhibit A since they are deducted from the Debtor's weekly pay check and are therefore already reflected by the amount of his net monthly income. The Debtor's total monthly expenses equal $2,848.00, leaving an apparent monthly deficit of $28.56. Accordingly, the Debtor has satisfied his burden of production with respect to § 523(a)(15)(A); he has presented a *prima facie* case with respect to the issue of whether he is unable to indemnify the Plaintiff with respect to the Providian debt. The pertinent inquiry for § 523(a)(15)(A) purposes, however, is whether a debtor has the ability to pay a debt from income "not *reasonably necessary* to be expended for the maintenance or support of the debtor or a dependent of the debtor...." § 523(a)(15)(A) (emphasis added). Consequently, expenses that are not reasonably necessary for the maintenance or support of the debtor or a dependent should not be considered as expenses in the § 523(a)(15)(A) calculus. *See Shea*, 221 B.R. at 500–01 (ignoring unnecessary expenses when applying § 523(a)(15)(A)).

---

3. This number is determined by dividing the monthly overtime pay of $250.00 listed on the Debtor's financial affidavit by the hourly wage of $18.26, which yields roughly 13.6 hours.

4. The weekly pay figures are converted to monthly figures by multiplying them by 4.3. Thus, the Debtor's base weekly net income of $397.00 plus his wife's net income of $300.00 totals $697.00 per week or $2,997.10 per month. When added to the net average overtime pay per month of $164.34, the total monthly income equals $3,161.44.

5. $3,161.44 − $342.00 = $2,819.44.

The Debtor and his current spouse both work and have no dependents living with them. The Debtor's monthly transportation expense of $773.00 includes payments for two automobiles and one motorcycle.[6] It is reasonable to assume that the Debtor and his current spouse have a need for two automobiles. However, no evidence was presented indicating that the Debtor's motorcycle is reasonably necessary for his, or his dependents', maintenance or support. Consequently, the Court finds that the Debtor's monthly expense of $137.00 for his motorcycle shall be ignored as an expense for the purpose of computing his disposable income. The Debtor's monthly expenses, for purposes of § 523(a)(15), therefore total $2,711.00.[7]

Reconciling the Debtor's monthly income of $2,819.44 with his monthly expenses of $2,711.00 yields a positive net monthly income of $108.44. Although not a large sum, this amount could reasonably support indemnification of the Plaintiff against payment of the Providian debt. Accordingly, the Court concludes that the Plaintiff has met her burden of persuasion with respect to § 523(a)(15)(A).

### E. The Balancing Test

In addition to clearing the § 523(a)(15)(A) hurdle, the Plaintiff must also meet her burden under § 523(a)(15)(B) before the relevant debt can be found nondischargeable. More precisely, the Plaintiff must show that a discharge of the debt would result in a detriment to her that outweighs the benefit to the Debtor—the so-called "balancing test." The issue, therefore, is in whose favor this balance tips.

Similarly to the § 523(a)(15)(A) analysis, it is appropriate to consider the Debtor's disposable income in applying the § 523(a)(15)(B) balancing test. Section 523(a)(15)(B), however, envisions a test involving the circumstances of multiple parties and therefore also warrants consideration of the Plaintiff's disposable income for comparison purposes. *See Konick*, 236 B.R. at 529–530 (comparing both parties' financial circumstances in the context of § 523(a)(15)(B)); *Brasslett*, 233 B.R. at 185 (same); *Dressler*, 194 B.R. at 305–06 (same). The Plaintiff testified that her income consists of child support payments received from the Debtor and roughly $8.00 in interest income per month. Pursuant to the Debtor's testimony, his child support payments will increase shortly to $908.00 per month. Because the Plaintiff has recently had a baby with her current husband, and must care for her two children from her marriage to the Debtor, the Court finds that it is reasonable for the Plaintiff to not be working at this time and that her status will likely continue for the foreseeable future. The Plaintiff also testified that her current spouse receives a weekly net income equal to $446.07, which converts to a monthly figure of $1,918.10.[8] Therefore, the Plaintiff has a total monthly income of $2,834.10.[9]

The Court finds that the Plaintiff's total monthly expenses are as outlined in Exhibit B to this opinion. The amounts are derived from the Plaintiff's financial affidavit filed with the Hillsborough County Superior Court on April 12, 1999, which was offered to this Court as evidence of the Plaintiff's current financial circumstances, and her testimony at trial. *See* Ex. 3, Financial Affidavit of Shelley A. Garrity dated April 12, 1999. The Plaintiff testified that she currently has a monthly car payment of $349.00, which is included in Exhibit B's total transportation expense of $449.00. The Plaintiff's monthly expenses also include a monthly payment in the amount of $177.79 on a consolidated student loan obligation arising from loans to

---

**6.** On November 18, 1998, the Debtor signed a reaffirmation agreement concerning the debt secured by the motorcycle.

**7.** $2,848.00 − $137.00 = $2,711.00

**8.** $446.07 × 4.3 = $1,918.10

**9.** $1,918.10 + $908,00 + $8.00 = $2,834.10

both the Plaintiff and the Debtor. Under the terms of the Divorce Order, the Plaintiff is required to pay this obligation. The sum of the Plaintiff's monthly expenses equals $2,976.87. This amount, when compared with the Plaintiff's total monthly income of $2,834.10, yields a negative monthly net income of $142.77.

The Plaintiff does not currently possess sufficient resources to meet her monthly expenses. If she is forced to pay the Providian debt, without indemnification from the Debtor, her financial situation would become even more precarious. The Plaintiff does not have the "personal resources to survive the consequences of discharge." *See Brasslett,* 233 B.R. at 185 (citing *Dressler,* 194 B.R. at 305). On the other hand, as discussed above, the Debtor does possess the ability to indemnify the Plaintiff from income not reasonably necessary for his support or his spouse's support should the Plaintiff satisfy the Providian debt. Discharging the Debtor's obligation to indemnify the Plaintiff would likely produce a serious detriment to the Plaintiff, whereas the consequent benefit to the Debtor would be of a lesser magnitude. Accordingly, the Court finds that the § 523(a)(15)(B) balancing test tips in the Plaintiff's favor.

## III. CONCLUSION

For the reasons stated above, the Court finds that the Plaintiff has satisfied her burden of persuasion with respect to §§ 523(a)(15)(A) and (B). Consequently, the Debtor's obligation to indemnify the Plaintiff against payment of the Providian debt, as arising from the Divorce Order, is nondischargeable. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate judgment in accordance with this opinion shall be entered.

### EXHIBIT A
*Itemization of Debtor's Monthly Expenses*

| Expense | Amount |
| --- | --- |
| First Mortgage | $678.00 |
| Second Mortgage | 317.00 |
| Home Maintenance | 75.00 |
| Total Utilities | 286.00 |
| Total Insurance | 169.00 |
| Transportation | 773.00 |
| General and Personal | 525.00 |
| Children's Expenses and Activities | 25.00 |
| Total: | $2,848.00 |

### EXHIBIT B
*Itemization of Plaintiff's Monthly Expenses*

| Expense | Amount |
| --- | --- |
| First Mortgage | $898.81 |
| Home Maintenance and Condo Fee | 92.00 |
| Total Utilities | 347.00 |
| Total Insurance | 82.27 |
| Uninsured Health Care | 52.00 |
| Transportation | 449.00 |
| General and Personal | 513.00 |
| Children's Expenses and Activities | 165.00 |
| Loan Payments | 177.79 |
| Credit Card Payments | 200.00 |
| Total: | $2,976.87 |