In the Matter of Robin Jones
DANIEL, Debtor.

Kevin Hester, Plaintiff,

v.

Robin Jones Daniel, Defendant.

Bankruptcy No. 01–54502 RFH.
Adversary No. 02–5013.

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

Feb. 26, 2003.

Kirby R. Moore, LLC, Macon, GA, for
Plaintiff.

Jason M. Orenstein, Macon, GA, for Defendant.

### MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

Kevin Hester, Plaintiff, filed on January 14, 2002, an Objection to the Dischargeability of Debt Pursuant to 11 U.S.C. § 523. Robin Jones Daniel, Defendant, filed a response and a counterclaim on February 7, 2002. Plaintiff filed a response to the counterclaim on February 19, 2002. This adversary proceeding came on for trial on October 29, 2002. The Court, having considered the evidence presented and the arguments of counsel, now publishes this memorandum opinion.

### FINDINGS OF FACT

Defendant is a high school graduate who attended college for one year. Defendant is twenty-eight years old. Defendant has been married three times.

Defendant's first husband, John Herring, is the father of Defendant's only child. Defendant was given custody of her son who is now eight years old. Defendant and Mr. Herring were divorced in August of 1995. Mr. Herring was ordered to pay monthly child support of $290. Mr. Herring increased his monthly payments to $500 in June of 2002. Defendant testified that Mr. Herring knew that Defendant was having a hard time and wanted to provide for his son. Defendant testified that because of the payment increase, she agreed for Mr. Herring to claim their son as a dependent on his tax returns every other year. Mr. Herring has married and has a one-year-old son. Defendant be-

lieves that Mr. Herring's annual income is between $45,000 and $50,000. Defendant testified that she has not sought a court order increasing the child support because Mr. Herring is supportive and Defendant "does not want to rock the boat." Defendant testified that she talked with an attorney in August of 2001 about seeking an increase in child support and was told it was not worth her time. Defendant acknowledges that the right to child support belongs to the child rather than to the custodial parent.[1]

Plaintiff is Defendant's second husband. Defendant was employed at some six different jobs during the marriage. Defendant's annual income during the marriage was between $18,000 and $25,000. Plaintiff and Defendant were married on March 21, 1998. Plaintiff and Defendant separated on November 17, 2000. Their divorce decree was entered on February 6, 2001. The divorce decree adopted by reference a settlement agreement, which had been signed by Plaintiff and Defendant. Plaintiff's attorney prepared the agreement. Defendant was not represented by counsel. The agreement provides that Plaintiff would receive the marital residence and would be solely responsible for the mortgage. Defendant received certain marital furniture, which had been purchased from Rooms To Go. The agreement provides, in part, as follows:

> With respect to the debts of the parties, the Defendant agrees to pay to the Plaintiff the sum of $200.00 per month for a period of 153 months, beginning January 1, 2001 and continuing on the first of each month for an additional 152 months, or until earlier paid in full by the Defendant, for [a] total principal in-

---

1. *See Dept. of Human Resources v. Mitchell,* 232 Ga.App. 215, 501 S.E.2d 508, 509 (1998), *cert. denied,* ("right of a child to support belongs to the child and cannot be waived by a parent"); *Stewart v. Stewart,* 160 Ga.App. 463, 287 S.E.2d 378, 379 (1981) ("child support is the right of the child and not of its custodian").

debtedness in the amount of $17,303.24. Said indebtedness to bear interest at the rate of 9.99% per annum. The indebtedness covered by this paragraph represents one-half of the parties credit card debt and the indebtedness currently owed for a furniture payment at Rooms To Go. It is the intent of this paragraph that the Defendant be required to assume and pay said indebtedness to the Plaintiff and the Plaintiff shall be responsible for the payment of the indebtedness to the appropriate creditors. The debts included under this paragraph are not joint debts and the Plaintiff is the sole obligor with respect to the creditors. The Defendant expressly waives her right to discharge the debt to the Plaintiff as set forth herein under any of the United States Bankruptcy laws and the Defendant expressly agrees to not list or include the indebtedness to the Plaintiff as set forth herein on any Chapter 7 or Chapter 13 Bankruptcy that she may file, it being the express intent of the parties that said indebtedness not be dischargeable under the Bankruptcy laws of the United States.

Thus, Defendant agreed to assume one-half of the credit card debt and the obligation owed to Rooms To Go. Defendant agreed to make 153 monthly payments of $200 to Plaintiff who would, in turn, pay the creditors. Plaintiff testified that Defendant made only three payments totaling $1,500.[2] Defendant has sold the Rooms To Go furniture. Defendant did not pay any of the proceeds to Plaintiff.

Defendant's third marriage was to Gene Daniel. The marriage lasted six months. Defendant filed for divorce in October of 2001 and the divorce was final in August of 2002. Defendant received nothing from the divorce. Defendant and Mr. Daniel assumed their respective obligations.

Defendant met William David Hicks about one year ago. They became romantically involved in May of 2002. Defendant and Mr. Hicks have discussed "a future together." Defendant, however, told Mr. Hicks that she was not ready for marriage, and their marital plans are on hold. Defendant lost her job and moved into Mr. Hicks' residence in August of 2002. Mr. Hicks, his twenty-one-year-old son, Defendant, and Defendant's eight-year-old son live in the residence.

Mr. Hicks is a warehouse manager. His annual gross income is $45,000, and his weekly net pay is $674.

Defendant "signs over" to Mr. Hicks the $500 child support check that Defendant receives from her first husband, Mr. Herring. Mr. Hicks pays Defendant's car loan of $250. Mr. Hicks uses the remaining $250 to pay household expenses. Defendant's car will be paid off in July 2003. Defendant's car is a 1994 Honda Civic with 135,000 miles. Defendant pays her car insurance, which is $110 per month.

Defendant has been employed at some ten different jobs during the past ten years. Her longest employment was two years with an office supply company. She also has worked for a bank, an insurance company, and as a make-up consultant. Defendant testified that her gross annual income has been as follows: $20,000 in 1999; $23,000 in 2000; and $16,000 in 2001. Defendant, during those years, received annual child support of $3,480. Defendant has no health insurance. Defendant describes her health as "fair." Defendant has had a large number of NSF and overdraft checks. At one time, she was paying monthly NSF charges of $109.

Defendant's current income is $500 in monthly child support and $120 per week as a part-time make-up consultant.

**2.** Defendant testified that she made four or five payments.

Defendant testified that she has worked "off and on" as a make-up consultant for about ten years. Defendant does not have a cosmetologist license and, thus, must work for a cosmetic company. Defendant testified that she will start cosmetology school next week. She will attend school full time for at least a year. She will pay for her education, which will cost $8,000, by obtaining a Pell grant and student loans. Defendant will have to repay the student loans, which will total some $4,000. Defendant testified that she can earn "a lot more" as a licensed cosmetologist.

Plaintiff is twenty-nine years old and has worked for an insurance company for six and one-half years. Plaintiff has a college degree. Plaintiff testified that his current monthly net pay is $2,003.64 and that his monthly expenses total $2,111. Plaintiff testified that he is trying to sell the former marital residence for $58,000, but would probably accept an offer for the mortgage, which is some $48,000. Plaintiff testified that the market for the residence is not good. If Plaintiff sells the residence, his monthly expenses would decrease by $476.[3]

Plaintiff has lived with his parents since he and Defendant were divorced. Plaintiff testified that he cannot afford to move out. Plaintiff testified that a personal bankruptcy filing may adversely impact upon his job.

Defendant filed a petition under Chapter 7 of the Bankruptcy Code on October 9, 2001. Defendant's current obligations to Plaintiff under paragraph 4 of the settlement agreement total $18,900, plus 9.99 percent interest.

---

**3.** Plaintiff's monthly expenses for the residence are: mortgage—$435; pest control—$21; water—$20.

## CONCLUSIONS OF LAW

Plaintiff contends that Defendant's obligations under paragraph 4 of the settlement agreement are nondischargeable under section 523(a)(15) of the Bankruptcy Code.[4] Defendant, in her counterclaim, contends that the obligations are dischargeable. The obligations at issue require Defendant to pay Plaintiff $200 per month for 153 months, plus 9.99 percent interest.

Section 523(a)(15) provides:

**§ 523.   Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that

---

**4.**   11 U.S.C.A. § 523(a)(15) (West Supp.2002). Plaintiff's counsel announced at trial that Plaintiff was not pursuing his contention that Defendant's obligations were nondischargeable under section 523(a)(5).

outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;

11 U.S.C.A. § 523(a)(15) (West Supp.2002).

In *Whitehead v. Whitehead (In re Whitehead),*[5] this Court stated, in part:

Simply stated, section 523(a)(15) provides that certain otherwise dischargeable debts incurred in the course of a divorce or separation are nondischargeable unless the debtor does not have the ability to pay the debts or unless discharging the debts would result in a benefit to the debtor that outweighs the detrimental consequences to the spouse, former spouse, or child of the debtor.

Most courts hold that a former spouse must prove that the debts were incurred in connection with a divorce or separation. The burden then shifts to the debtor to prove that the debtor does not have the ability to pay the debts or that discharging the debts would result in a benefit to the debtor that outweighs the detrimental consequences to the former spouse.

Most courts hold that the financial circumstances of a debtor's new spouse or live-in companion should be considered.

The fact that a live-in companion may not have a legal duty to continue to provide support to the debtor's household is a factor to be considered. *In re Halpen [Halper],* 213 B.R. [279] at 285 [(Bankr.D.N.J.)]; *see also In re Crosswhite,* 148 F.3d [879] at 890 [(7th Cir. 1998)] (dissent) ("girlfriend could be gone on a moment's notice with no purse strings attached").

In *In re Konick[,* 236 B.R. 524 (1st Cir. BAP 1999)] , the Bankruptcy Appellate Panel for the First Circuit stated:

A view of the case law shows that courts uniformly take into account the debtor's current financial condition, i.e., at the time of trial, when determining whether a claim should be discharged under § 523(a)(15). *See, e.g., Jodoin v. Samayoa (In re Jodoin),* 209 B.R. 132, 142 (9th Cir.BAP1997); *In re Brasslett,* 233 B.R. [177] at 183 [(Bankr.D.Me.1999)]; *In re Dressler,* 194 B.R. [290] at 300–01 [(Bankr. D.R.I.1996)]; *Gantz v. Gantz (In re Gantz),* 192 B.R. 932, 934–35 (Bankr. N.D.Ill.1996); *In re Hesson,* 190 B.R. [229] at 238 [(Bankr.D.Md.1995)]. In addition, courts may consider the debtor's future earning capabilities and long-term financial prospects, particularly where the claim is to be paid incrementally over a period of time. *See, e.g., Wolfe v. McCartin (In re McCartin),* 204 B.R. 647, 654 (Bankr.D.Mass.1996)[;] *Johnston v. Henson (In re Henson),* 197 B.R. 299, 303–04 (Bankr.E.D.Ark.1996); *In re Straub,* 192 B.R. at 528. " 'A court may look to a debtor's prior employment, future employment opportunities, and health status to determine the future earning potential of the Debtor." ' *In re Brasslett,* 233 B.R. at 184 (*quoting Hart v. Molino (In re Molino),* 225 B.R. 904, 908 (6th Cir. BAP 1998)).

236 B.R. at 529.

*See also Findley v. Findley (In re Findley),* 245 B.R. 526, 532 (Bankr. N.D.Ohio 2000) ("each party's projected income should be measured by his or her realistic earning potential, not by

**5.** Ch. 7 Case No. 99–52131 RFH, Adv. No. 99–5114, 2000 WL 33740254 (Bankr.M.D.Ga. June 1, 2000).

lifestyle or other choices which restrict income"); *Migneault v. Migneault,* 243 B.R. 585, 589 (D.N.H.1999) (debtor's earning capacity should be considered in evaluating ability to pay); *In re Smither,* 194 B.R. [102] at 107–08 [(Bankr. W.D.Ky.1996)] (court should consider present income and future earning potential); *In re Huddelston,* 194 B.R. [681] at 687–88 [(Bankr.N.D.Ga.1996)] (prospect for change must be considered); *Straub v. Straub (In re Straub),* 192 B.R. 522, 528–29 (Bankr.D.N.D. 1996) (future ability to pay debt should be considered); *see generally In re Crosswhite,* 148 F.3d at 889 (court should consider totality of circumstances when balancing the equities under section 523(a)(15)(B)); *In re Gamble,* 143 F.3d [223] at 226 [(5th Cir.1998)] (totality of circumstances applies under section 523(a)(15)(B)).

■ The Court is not persuaded that Defendant has the ability to pay the obligations at issue. Defendant's current monthly income, including child support, is $980. Defendant's expenses include a car payment ($250) and car insurance ($120). Defendant and her son depend upon a friend, Mr. Hicks, for a place to live. Mr. Hicks does not have a legal duty to continue to help Defendant and her son. The Court notes that Defendant is twenty-eight years old and has been married three times. Defendant has been employed at ten different jobs during the past ten years. Thus, Defendant has not had a stable, long-term employment history. It is true that Defendant plans to attend cosmetology school full time for the next year. This has the potential to substantially increase her income. Still, Defendant must complete cosmetology school, which is not a certainty. If she completes the school, she will have a student loan to repay. Defendant has an eight-year-old son who she must raise. Plaintiff has worked hard to satisfy his marital obligations under the separation agreement. The Court notes that Plaintiff's monthly expenses will decrease by $476 when he sells the former marital residence. When the Court considers Defendant's employment history, her income, and her family responsibilities, the Court is not persuaded that she has the ability to repay the obligations owed Plaintiff.

Plaintiff argues that Defendant could, and in fact should, seek a court order increasing the child support for Defendant's son. The right to child support, however, belongs to the child rather than to the custodial parent.

■ Plaintiff also argues that in the settlement agreement, Defendant expressly waived her right to discharge in bankruptcy the obligations at issue. The agreement provides that Defendant expressly agreed not to list her obligations to Plaintiff on any bankruptcy petition, it being the express intent of Plaintiff and Defendant that the obligations not be dischargeable in bankruptcy. The agreement also provides that Defendant expressly waived her right to discharge her obligations to Plaintiff.

The Federal Rules of Bankruptcy Procedure provide that a debtor *shall* file with the petition a verified list containing the names and addresses of *each creditor* unless the petition is accompanied by a schedule of liabilities. Fed. R. Bankr.P. 1007(a)(1), 1008. Thus, federal bankruptcy law required that Defendant list her obligations to Plaintiff. Defendant's agreement not to list her obligations to Plaintiff was contrary to the commands of federal bankruptcy law. The Court is persuaded that Defendant's agreement not to list her obligations is not enforceable.

"The courts have uniformly held that a waiver of the right to file a bankruptcy

case is unenforceable. Further, courts have not permitted pre-petition waivers of protection afforded by a bankruptcy case to be self-executing." *In re Shady Grove Tech Center Associates Limited Partnership*, 216 B.R. 386, 389 (Bankr.D.Md.1998), *opinion supplemented*, 227 B.R. 422 (Bankr.D.Md.1998).

In *Doug Howle's Paces Ferry Dodge, Inc. v. Ethridge (In re Ethridge)*,[6] the plaintiff filed a civil action against the defendant. This Court stated, in part:

> The civil action was settled by a consent judgment entered on October 25, 1984. In the judgment, Defendant agreed to pay Plaintiff $98,601.44 principal, $3480 interest, and $6900 attorney's fees. Defendant further agreed that the consent judgment would be considered an agreement under section 524(c) of the Bankruptcy Code, that he would not seek to discharge the judgment under any provision of the Bankruptcy Code, and that the judgment would not be dischargeable in bankruptcy. Defendant testified that he was aware of the contents of the consent judgment and that he was represented by counsel when he signed the consent judgment.
>
> . . . .

## CONCLUSIONS OF LAW

Plaintiff has conceded that this Court has exclusive jurisdiction regarding the dischargeability of a debt and, therefore, is not bound by the section of the judgment which states that the debt is non-dischargeable in bankruptcy. Plaintiff contends, however, that a legally binding contract was created when Defendant agreed to forego his legal right to attempt to discharge the debt. Plaintiff requests that the Court enforce this con-

tract. The Court will first examine the validity of this waiver agreement.

A contractual waiver of the dischargeability of a particular debt should be governed by the requirements of section 524(c) and (d) which control the validity of reaffirmation agreements. . . .

. . . [The requirements of section 524 are] clearly not met by the consent judgment, therefore the judgment is unenforceable as a reaffirmation agreement.

The Court has determined that section 524 does not prevent the discharge of Plaintiff's claim. Plaintiff, however, contends that a party may agree to forego a legal right, that such an agreement creates a binding contract, and that this Court should enforce the contract. If the Court were to adopt Plaintiff's analysis, then creditors would essentially have the power to nullify the fresh start provided by the Bankruptcy Code. One of the central purposes of the Bankruptcy Code is to give debtors " '. . . new opportunity in life and clear field for future effort, unhampered by pressure and discouragement of pre-existing debt. . . . ' " Plaintiff's argument is contrary to the spirit of the Bankruptcy Code. The Court concludes, therefore, that the provisions of the consent judgment which pertain to the waiver of Defendant's right to a discharge are void. . . .

. . . .

In *In re Halpern*[, 810 F.2d 1061 (11th Cir.1987)], the Eleventh Circuit Court of Appeals affirmed the ruling of the district court and the bankruptcy court when it concluded that the bankruptcy court had properly utilized issue preclusion to reach conclusions regarding the facts underlying a determination of the dischargeability of a debt evi-

---

**6.** 80 B.R. 581 (Bankr.M.D.Ga.1987).

denced by a state court consent judgment. The consent judgment in *In re Halpern* stated that the consent judgment would constitute a final adjudication of the findings of fact. The consent judgment also stated that the judgment would collaterally estop the debtor from denying any of the factual or legal issues established in the judgment and that the debtor received consideration for agreeing to allow the judgment to act as a final adjudication. 810 F.2d at 1064–65. The Eleventh Circuit held that issue preclusion was proper since the consent judgment contained very detailed factual findings and there was no evidence that the debtor had signed the consent judgment under duress or coercion. *Id.* at 1065. The Court of Appeals noted, however, that the consent judgment only had a preclusive effect regarding the findings of fact and that the bankruptcy court must make an independent decision concerning the dischargeability of the debt. *Id.* at 1063–64.

The consent judgment presently before the Court does not contain any findings of fact, nor does the consent judgment provide that it is to have any collateral estoppel effect. The present adversary proceeding is, therefore, distinguishable from *In re Halpern.* Thus, the Court must make independent findings regarding the factual basis underlying the initial incurring of the debt evidenced by the consent judgment.

80 B.R. at 585–87.

In *Hayhoe v. Cole (In re Cole)* [7] Hayhoe ("Appellant") filed a complaint in state court for nonpayment on a promissory note. Appellant and Cole ("Appellee") later agreed to a Stipulated Judgment which provided that Appellant have a judgment for $298,000. The Bankruptcy Appellate Panel for the Ninth Circuit stated, in part:

The Stipulated Judgment also provided that: (1) Appellant agreed not to list the Debt in any bankruptcy petition or request that the Debt be discharged; . . .

226 B.R. at 650.

The bankruptcy court held that the Stipulated Judgment was "nothing but an attempt to waive the bankruptcy discharge prospectively, and [was] therefore . . . [un]enforceable." No appellate court has expressly ruled on the validity of prepetition waivers of the bankruptcy discharge. . . . In a footnote, the court stated in dictum that, "[f]or public policy reasons, a debtor may not contract away the right to a discharge in bankruptcy. However, a debtor may stipulate to the underlying facts that the bankruptcy court must examine to determine whether a debt is dischargeable." Because the stipulated facts in the judgment established all of the elements of the § 523(a)(4) cause of action, the court held that collateral estoppel applied. The court did not rely on the purported waiver of discharge for its affirmance.

226 B.R. at 651.

Appellant has not cited a single case that recognizes the validity of prepetition waivers of discharge resulting from state court litigation. We have only found three cases where courts have held that waivers of discharge in bankruptcy proceedings did not have to comply with the reaffirmation requirements of § 524.

However, these cases are distinguishable from the situation here. In all three cases, the settlement occurred in nondischargeability litigation in the bankruptcy court and not litigation in state court. . . . Consequently, a state court

7. 226 B.R. 647 (9th Cir. BAP 1998).

stipulated judgment where the debtor waives his right to discharge is unenforceable as against public policy. However, a stipulation in a related bankruptcy case that a debt is nondischargeable is enforceable and res judicata.

226 B.R. at 652–53.

For the foregoing reasons, we conclude that a prepetition waiver of the dischargeability of a debt undermines the purpose of the Code to give an honest but unfortunate debtor a fresh start. The bankruptcy court correctly held that the prospective waiver of the dischargeability of the Debt was unenforceable.

226 B.R. at 654.

We have already concluded that the portion of the Stipulated Judgment that purported to waive Appellee's right to obtain a discharge of the Debt was unenforceable as against public policy. However, if the parties stipulated to the underlying facts that support a finding of nondischargeability, the Stipulated Judgment would then be entitled to collateral estoppel application.

226 B.R. at 655.

■■■ Turning to the case at bar, the settlement agreement contains no findings of fact that would make Defendant's obligation nondischargeable under section 523(a)(15). The Court notes that under section 523(a)(15), the court considers the financial conditions of the parties at the time of the dischargeability hearing rather than at the time of the state court divorce. The Court also notes that Defendant was not represented by counsel when she was divorced from Plaintiff. The Court further notes that a bankruptcy court has exclusive jurisdiction to determine the dischargeability of an obligation under section 523(a)(15).[8]

Plaintiff relies upon *Laing v. Johnson (In re Laing).*[9] In that case, the debtor stipulated in his Chapter 11 plan that a certain obligation was not dischargeable and waived discharge of the obligation in any future bankruptcy. The Chapter 11 plan was confirmed. The bankruptcy court entered an order declaring that the obligation was nondischargeable. The Chapter 11 case was converted to a Chapter 7 case.

The debtor later filed a separate Chapter 7 petition. The bankruptcy court held that the obligation was nondischargeable because the confirmed Chapter 11 plan precluded relitigation of the obligation's dischargeability. The district court affirmed. The Tenth Circuit Court of Appeals also affirmed and stated:

Laing's earlier confirmed Chapter 11 plan binds him as a final judgment on the merits....

Since the same parties are involved here, Laing may not argue in this case that his debt is dischargeable if the issue "[was] or could have been raised in the prior action."

Laing did not actually argue and present evidence regarding the dischargeability of his debt in the earlier Chapter 11 confirmation hearing. The parties merely agreed that the debt was nondischargeable, and the court so ordered. Nevertheless, Laing could have objected and avoided the binding effect of that declaration....

Not only could Laing have raised the issue, but the parties actually did. The final judgment expressly declared the debt nondischargeable. Although by agreement rather than litigation, that

---

8. *See* 11 U.S.C.A. § 523(c)(1) (West 1993).

9. 31 F.3d 1050 (10th Cir.1994).

order has "the same effect as a district court's judgment on the merits." The plan's stipulation, along with the order declaring the debt nondischargeable, binds Laing "[r]egardless of whether that provision is inconsistent with the bankruptcy laws" because "it is nonetheless included in the Plan, which was confirmed by the bankruptcy court without objection and was not appealed." 31 F.3d at 1051–52.

Plaintiff argues that under Laing, parties can agree that an obligation will be nondischargeable in bankruptcy. The Court notes, however, that the agreement in *Laing* was part of a confirmed Chapter 11 plan and that the bankruptcy court had entered an order declaring the obligation to be nondischargeable. In the case at bar, the issue of whether Defendant's obligations to Plaintiff are dischargeable was never ruled upon in a prior bankruptcy case. The Court is not persuaded that the waiver of discharge in the settlement agreement is dispositive of Defendant's obligations under section 523(a)(15).

An order in accordance with this memorandum opinion will be entered this date.