**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: WILLIAM P. BALLARD,
                              *Debtor.*

RANDI B. FERRARO,
                    *Claimant-Appellant,*

v.                                              No. 02-1819

WILLIAM P. BALLARD,
                    *Debtor-Appellee,*

and

UNITED STATES TRUSTEE,
                              *Trustee.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Robert G. Doumar, Senior District Judge.
(CA-01-805, BK-00-71225-SCS)

Argued: April 3, 2003

Decided: June 26, 2003

Before WILLIAMS and MICHAEL, Circuit Judges,
and Terry L. WOOTEN, United States District Judge for the
District of South Carolina, sitting by designation.

Reversed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Ellen Charlotte Carlson, ROUSSOS, LANGHORNE & CARLSON, P.L.C., Norfolk, Virginia, for Appellant. Karen Marie Crowley, MARCUS, SANTORO, KOZAK & MELVIN, P.C., Portsmouth, Virginia, for Appellee. **ON BRIEF:** Frank J. Santoro, MARCUS, SANTORO, KOZAK & MELVIN, P.C., Portsmouth, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Randi Ferraro, a claimant in the bankruptcy proceeding of her ex-husband William Ballard, appeals from the district court's order reversing the bankruptcy court's order that held that debt arising out of a divorce settlement agreement was not dischargeable under 11 U.S.C.A. § 523(a)(15) (West Supp. 2003). Because we find that the bankruptcy court did not clearly err in determining that the debt was not dischargeable, we reverse the district court's order and reinstate the bankruptcy court's order.

### I.

Ferraro was legally separated from Ballard in 1995. In 1997, they resolved their alimony, child-support, and property issues in a written stipulation agreement and were subsequently divorced. As part of the stipulation agreement, Ballard agreed to give Ferraro a portion of the proceeds from the sale of certain properties that Ballard owned through a partnership in which he had a 50% interest (the BART partnership). Relevant to this case, Ballard agreed to give Ferraro 25% of the equity realized from the sale of property owned by the BART partnership in Chesapeake, Virginia, if it was sold within three years

of the stipulation agreement, or 25% of the appraised value of the Chesapeake property if it was not sold within three years.[1]

Despite Ferraro's requests, the Chesapeake property was not sold within three years of the stipulation agreement and, during this time, Ballard significantly increased his indebtedness by financing a new business with mortgages on the Chesapeake property and the BART partnership. Unfortunately, the business failed. About two months after the three-year period under the stipulation agreement expired, Ferraro requested 25% of the appraised value of the Chesapeake property from Ballard. In May 2000, after Ballard refused her request, Ferraro initiated enforcement proceedings in state court in Norfolk, Virginia, for failure to pay child-support and 25% of the appraised value of the Chesapeake property as required under the stipulation agreement. The state court entered an order in favor of Ferraro, finding the stipulation agreement "clear and unambiguous" and requiring Ballard to pay Ferraro the child-support payments and 25% of the appraised value of the Chesapeake property.

Also in May 2000, Ferraro remarried. Her new husband, a part-owner of a retail chain of sporting goods and clothing stores, had an annual income ranging from $171,000 to $500,000. With Ferraro's annual income of $44,000, the Ferraros' combined annual income ranged between $215,000 to $544,000. Ferraro's new husband, however, was obligated to pay support obligations in excess of $100,000 per year to his former spouse and his handicapped daughter. Ballard also remarried to a working spouse. He and his new wife had a combined yearly income of approximately $98,000. Ballard is also one of ten beneficiaries of an irrevocable trust with approximately $85,000 in assets and a beneficiary of a separate marital trust, over which Ballard's mother has a power of appointment.

---

[1]The property's appraised value was approximately $450,000 and the property had a lien of roughly $340,000. Because Ballard waited until the three-year period ended, he was required to pay 25% of the appraised value of the property, approximately $112,500. If Ballard had sold the Chesapeake property within the three-year period specified in the stipulation agreement, he would have only needed to pay 25% of the *equity* realized from the sale, roughly $27,500.

Faced with huge debt from his failed business and the judgment against him from Ferraro's state suit, on July 21, 2000, Ballard filed a petition in the United States District Court for the Eastern District of Virginia under Chapter 7 of the United States Bankruptcy Code. Ferraro timely filed a complaint, objecting to the discharge of certain obligations under the stipulation agreement, including child support obligations and the Chesapeake property debt. Ferraro alleged that Ballard's obligations were not dischargeable under 11 U.S.C.A. § 523(a)(5) (West Supp. 2003) (exempting certain spouse and child support obligations from discharge) or 11 U.S.C.A. § 523(a)(15) (exempting certain familial property settlements from discharge). Ballard admitted that the child support obligations were not dischargeable under § 523(a)(5), and the bankruptcy court entered summary judgment in Ferraro's favor on the counts relating to those obligations.

The bankruptcy court found that the Chesapeake property debt was not spousal or child support under § 523(a)(5), but that it was a familial property settlement under § 523(a)(15). Under § 523(a)(15), a debt is not dischargeable unless (A) "the debtor does not have the ability to pay"; or (B) "discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to [the] spouse." 11 U.S.C.A. § 523(a)(15)(A), (B). The bankruptcy court determined that Ballard is able to pay the Chesapeake property debt and that the benefits to Ballard of discharging this debt do not outweigh the detriment to Ferraro. The bankruptcy court based this latter determination on two findings: (1) "the only discernible benefit to Ballard of discharging the [Chesapeake property] Debt is not having to pay Ferraro the value of the Chesapeake property and thereby increasing his discretionary disposable income by whatever amount he is ordered to pay Ferraro ultimately, monthly or otherwise"; (J.A. at 726), and (2) even though the "detriment [to Ferraro of not receiving payment] is far from overwhelming," "payment of the [Chesapeake property] Debt w[ill] provide [Ferraro] with more funds to live independently of the largess of her new husband," (J.A. at 726).[2] The bankruptcy court also

---

[2]The bankruptcy court found that the Ballards had a monthly income of $8160.52 and monthly expenses of no more than $7236.89, resulting in "at least $923.63 each month" in disposable income. (J.A. at 676, 711-

concluded that the debt could not be partially discharged because "[t]he Code says nothing about partially discharging the debt; rather, the language gives the Court a decision to make: either the debt is discharged or it is not." (J.A. at 733.)

Ballard appealed the bankruptcy court's decision to the United States District Court for the Eastern District of Virginia, arguing that the bankruptcy court (1) erred in its balancing of the benefits to him and the detriment to Ferraro of discharging the Chesapeake property debt; and (2) erred in concluding that the Chesapeake property debt could not be partially discharged. The district court reversed the bankruptcy court on the first ground, finding that the bankruptcy court clearly erred in "its conclusion that Ballard would merely have to tap into an otherwise disposable income stream in order to pay the debt" because it based that conclusion "upon an explicit assumption that the debt would be structured and paid over time." (J.A. at 832.) The district court noted that, under Virginia law, Ballard could still be jailed for not immediately paying the Chesapeake property debt — and this potential detriment was not properly included in the bankruptcy court's analysis. The district court concluded:

> [T]he detriment to Ferraro, whom the Bankruptcy Court found to be in a position of relative affluence much greater than that of Ballard, of discharging this debt is outweighed by the benefit to Ballard of discharging the debt, inasmuch as Ballard would not be under the legal obligation to try to raise $112,000 plus interest immediately, or face execution against assets, or garnishment or such other enforcement procedures that creditors presently possess, including the remote but not inconceivable possibility of incarceration for failure to pay.

14.) Regarding the Ferraros, the bankruptcy court found that Mrs. Ferraro had a monthly net salary of $2400.00 and monthly expenses of $2704.26. (J.A. at 673-74.) Mr. Ferraro grossed between $14,000 and $42,000 monthly, but he had fixed expenses of at least $8,400 per month for spousal and child support and paid the entire mortgage for their personal residence of $2,400 per month. (J.A. at 675.)

(J.A. at 833.) The district court also upheld the bankruptcy court's determination that the Chesapeake property debt could not be partially discharged.

Ferraro timely appealed the district court's determination that the benefits to Ballard of discharging the Chesapeake property debt outweighed the detriment to Ferraro.

## II.

"We review the judgment of a district court sitting in review of a bankruptcy court de novo, applying the same standards of review that were applied in the district court." *In re Biondo*, 180 F.3d 126, 130 (4th Cir. 1999) (quotation marks omitted). "Specifically, '[w]e review the bankruptcy court's factual findings for clear error, while we review questions of law de novo.'" *Id.* (quoting *Loudon Leasing Dev. Co. v. Ford Motor Credit Co.* (*In re K & L Lakeland Inc.*), 128 F.3d 203, 206 (4th Cir. 1997)). "'[A] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.'" *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Furthermore, "[w]hen addressing exceptions to discharge, we traditionally interpret the exceptions narrowly to protect the purpose of providing debtors a fresh start." *Biondo*, 180 F.3d at 130. The policy of a fresh start, however, must be balanced by attention to "Congress' desire to uphold a state court's effort to effect economic justice between the parties to a marriage." *In re Crosswhite*, 148 F.3d 879, 887 (7th Cir. 1998).

The disagreement in this case deals with how a court should weigh the benefits of discharge to the debtor with the detriment of discharge to the spouse under 11 U.S.C.A. § 523(a)(15)(B). Section 523(a) provides, in relevant part:

> (a) A discharge under [certain enumerated sections] of this title does not discharge an individual debtor from any debt
> — . . .

(15) not of the kind described in paragraph (5) [dealing with alimony, maintenance and child support] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, . . . unless — . . .

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to [the] spouse . . . .

11 U.S.C.A. § 523(a).

Although the parties disagree about the amount of disposable monthly income each has, there is no real dispute that both parties have disposable monthly income and will suffer little detriment or receive little benefit if the Chesapeake property debt is paid over time or discharged. Rather, the main quarrel between the parties, and the reason why the district court reversed the bankruptcy court, is how much weight a court should put on the fact that it is possible in Virginia to request full and immediate payment of divorce settlements and that the debtor may be jailed if such payment is not made. The district court noted:

The fact of the matter is that the entire amount of the judgment — some $112,500 — would be due and owing immediately, along with 9% interest from the date of the judgment under Virginia law. The divorce court overseeing this judgment would even have the power to imprison Ballard upon non-payment, marital settlement situations being the last vestige of the old law that one could be jailed for indebtedness. . . . Ferraro would have the power to enforce the judgment in full at any time. The bankruptcy court did not contemplate the hardship to Ballard were he and his family required to engage in efforts to raise well in excess of $100,000 which in bankruptcy he does not possess.

(J.A. at 832-33.) The district court correctly noted that the bankruptcy court did not articulate all the potential risks that Ballard may face in state court. Nonetheless, as explained below, the bankruptcy court did

not clearly err by not including the possible risks of being jailed for nonpayment and having to pay the full marital debt immediately.

Ballard has the burden of proof to demonstrate that the benefit to him of discharging the Chesapeake property debt outweighs the harm to Ferraro. *See In re Crosswhite*, 148 F.3d at 885; *Gamble v. Gamble*, 143 F.3d 223,226 (5th Cir. 1998). Ballard has failed to carry his burden. First, the bankruptcy court properly did not consider the risk of going to jail that Ballard may face for nonpayment because it is a risk that the debtor brings upon himself by his conduct regarding payment of his debt. In Virginia, a person who owes support to a former spouse or children can be sentenced to a correctional facility only upon a finding of contempt or a failure to give a recognizance. Va. Code Ann. § 20-115 (Michie 2000). Contempt occurs when the party fails or refuses to comply with an order of the court, *see id.*, and a simple inability to pay is not sufficient, unless the payer "*voluntarily and contumaciously* brought on himself a disability to obey an order," *Street v. Street*, 480 S.E.2d 118, 122 (Va. App. 1997) (emphasis in original) (quoting *Laing v. Commonwealth*, 137 S.E.2d 896, 899 (Va. 1964)). Thus, even if Ballard were ordered to pay the full amount owed under the stipulation agreement for the Chesapeake property, and even if he did not pay, he would not face jail for failure to pay unless he "voluntarily and contumaciously" took action that prevented him from making the payment or otherwise willfully failed or refused to comply. *Id.* As a recognizance is merely an acknowledgment that he is indebted, *see* Black's Law Dictionary 1271 (6th ed. 1990), the failure to give a recognizance is something that is also completely within Ballard's control. It would be odd indeed to require a bankruptcy court to consider in its balance of benefits calculation risks to Ballard that are entirely within his control and can generally only be brought on by himself.

The bankruptcy court correctly found that Ballard has monthly disposable income with which he can make monthly payments, and absent a showing that there is some real risk that Ballard would be required to pay the full amount of the Chesapeake property debt at the time of judgment, the bankruptcy court did not clearly err in finding that the only benefit to Ballard would be an increase in his discretionary disposable income.

This benefit to Ballard must be weighed against the detriment to Ferraro if the debt is discharged. Ballard contends that the Chesapeake property debt should be discharged, despite the bankruptcy court's finding that he has disposable income, because Ferraro has sufficient income such that she will not suffer substantial detriment if the debt is discharged. In the balancing required under § 523(a)(15), three scenarios can occur when a property settlement debt is discharged. First, the benefit to Ballard could be greater than the detriment to Ferraro. Second, the benefit to Ballard could be roughly equal to the detriment to Ferraro. Third, the benefit to Ballard could be less than the detriment to Ferraro. Only under the first scenario is the debt discharged.[3] The plain language of the statute does not provide that debt should be discharged unless the spouse will suffer substantial detriment; rather, the statute provides for discharge when the "benefit to the debtor . . . outweighs the detrimental consequences to [the] spouse." 11 U.S.C.A. § 523(a)(15)(B). There is no separate requirement that the detrimental consequences to the spouse be substantial.

The bankruptcy court found that the detriment to Ferraro of discharging the Chesapeake property debt would be a reduction in her ability "to live independently of the largess of her new husband," while the only benefit that Ballard would receive was an increase in "his discretionary disposable income." (J.A. at 726.) Even if we add

---

[3]Ballard relies heavily on the legislative history of § 523(a)(15) for his claim that a debt should always be discharged unless the payee will suffer a substantial detriment upon discharge. The legislative history states: "The benefits of the debtor's discharge should be sacrificed [that is, the debt should not be discharged] only if there would be substantial detriment to the nondebtor spouse that outweighs the debtor's need for a fresh start." H.R. Rep. 103-835, at 54 (1994). Under this reading, Ballard's debt would be discharged under the first *two* scenarios, and possibly even in the third scenario if the detriment to Ferraro from discharge were not "substantial." The plain language of the statute, however, has a different test: The debt should be discharged when "discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to [the] spouse." 11 U.S.C.A. § 523(a)(15)(B). "[W]here, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms" without any reference to legislative history. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). Accordingly, we follow the plain language of the statute.

to Ballard's benefit the removal of the small risk that he would be required to pay the entire sum upon judgment in state court, the bankruptcy court did not clearly err in concluding that the debt should not be discharged because it is not clear that the benefit to Ballard outweighs the detriment to Ferraro and, therefore, we are "not left with a definite and firm conviction that a mistake has been committed," *Anderson*, 470 U.S. at 573.

### III.

For the foregoing reasons, the district court's order is reversed and the bankruptcy court's order is reinstated.

*REVERSED*