**In re Eunice M. ENCISO, Debtor.**

**John L. Ferguson, Plaintiff,**

**v.**

**Eunice M. Enciso, Defendant.**

**Bankruptcy No. 02–27766 BM.
Adversary No. 02–2716 BM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Oct. 15, 2003.

Earle D. Lees, Jr., DuBois, PA, for Plaintiff.

Joseph Colavecchi, Colavecchi, Ryan & Colavecchi, Clearfield, PA, for Defendant.

### *MEMORANDUM OPINION*

BERNARD MARKOVITZ, Bankruptcy Judge.

Plaintiff John Ferguson seeks a determination that the obligation of debtor Eunice Enciso, his former wife, to pay off a mortgage against property owned by plaintiff and in which he now resides is excepted from discharge by § 523(a)(15) of the Bankruptcy Code.

Debtor asserts that she is not able to pay off the mortgage and that the debt in question therefore is dischargeable in accordance with § 523(a)(15)(A).

Judgment will be entered in favor of plaintiff and against debtor. We find, for reasons set forth below, that debtor has the ability to pay off the mortgage and

that the detriment to plaintiff would outweigh the benefit to debtor if the debt were discharged.

— FACTS —

Plaintiff and debtor were married in June of 1993. No children were born as a result of their marriage. Plaintiff has two adult children from a previous marriage. Debtor has two minor children from a previous marriage.

On July 28, 1997, plaintiff and debtor jointly purchased as tenants by the entirety a house located in Philipsburg, Pennsylvania. The purchase price was $75,000. It served as their marital residence until they separated.

Contemporaneously therewith, plaintiff and debtor granted County National Bank a $60,000 mortgage against the property to obtain a portion of the purchase price. The amount due under this mortgage is $544 per month.

To make up the difference between the purchase price and the amount borrowed from County National Bank, plaintiff also granted Mid–State Bank a $17,500 mortgage against another property of which he was the sole owner and in which he resided after he and debtor separated. Debtor was not personally liable for this obligation. Payments due under this mortgage approximate $185 per month. The total amount still due and owing on this mortgage is not indicated in the record.

On October 15, 1998, after their marriage had unraveled, plaintiff commenced a divorce action against debtor in the Court of Common Pleas of Clearfield County, Pennsylvania.

Plaintiff and debtor executed a document entitled "Marriage Settlement Agreement" on January 25, 1999. Among other things, they agreed to sell the marital residence, with the sale proceeds being used first to pay off the mortgage against that property. Plaintiff would use any sale proceeds thereafter remaining to pay off the mortgage against the other property of which he was sole owner.

A divorce decree sundering their matrimonial bonds issued in the divorce proceeding on February 16, 1999.

Pursuant to the above provision in the marriage settlement agreement, the marital residence was placed on the market for sale. The asking price was $85,000 but their were no takers. After deciding that their efforts to sell the marital residence would be unsuccessful, plaintiff and debtor conveyed the property to debtor on April 26, 1999, for the recited consideration of $1.00. Debtor executed a $60,000 mortgage against the property in favor of County National Bank that same day, thereby relieving plaintiff of any personal liability for the previous mortgage against the marital residence.

After doing so for a while, debtor eventually stopped making payments on the mortgage against the property that plaintiff owns and in which he presently resides. She continues to this day, however, making payments on the mortgage against the former marital residence.

Plaintiff resumed making the payments due on the mortgage against his property lest the mortgagee initiate a foreclosure action. Thereafter he brought suit in the Court of Common Pleas of Clearfield County seeking a judgment against debtor in an amount equal to the payments he had made on the mortgage against his property plus the remaining principal owed on the mortgage.

Among other things, the state court determined on June 27, 2002, that plaintiff and debtor had orally agreed that they would convey the former marital residence to debtor alone upon condition that debtor

paid the full amount due on *both* mortgages. Judgment was entered in favor of plaintiff and against debtor in an amount equal to the payments plaintiff had made on the mortgage after debtor stopped making them plus the remaining principal balance.

Debtor neither appealed the order of June 27, 2002, nor satisfied the judgment against her. She instead filed a voluntary chapter 7 petition approximately three weeks later on July 22, 2002. The schedules accompanying the petition list assets with a total declared value of $77,225 and liabilities totaling $96,233.57.

Included among the assets listed is the former marital residence which was conveyed to debtor. The property is listed as having a value of $75,000 and as being subject to a mortgage in favor of National County Bank in the amount of $57,495, leaving equity in the amount of $17,505.

Debtor obviously intends to have discharged the debt she owes to plaintiff. He is listed on the schedules as having an undisputed general unsecured claim in the amount of $17,500.

Plaintiff presently is fifty-three years old. He has not worked since 1984 due to a back injury for which he receives worker's compensation in the amount of $129.19 per week. He has not applied for social security disability benefits because of the belief that he is not eligible to receive them.

Plaintiff is the sole owner of four properties and owns another jointly with his daughter. The only property subject to a lien or encumbrance is the one in which he presently resides and which is subject to the $17,500 mortgage in favor of Mid-State Bank. He estimates the aggregate value of his interest in these properties to be approximately $165,000. According to plaintiff's federal income tax return, the

net income he received from these properties for the year 2002 was $1,613.88.

Plaintiff's total net income for tax year 2002 was $8,330.88, or $694.24 per month, and is more or less the same in 2003. Plaintiff's brother lives with plaintiff and helps to pay household expenses.

Debtor, who presently is thirty-five years old, emigrated from Mexico to the United States in approximately 1990 and has lived in the United States since then. She presently resides in the former marital residence with a male companion. He paid for construction of a deck behind the house and for installation of an aboveground swimming pool since moving in and apparently has an income of his own in an unknown amount.

Debtor has been employed by Penn State University for several years. She previously worked in the housekeeping department and now unloads trucks and stocks groceries at an "entertainment facility" located on campus.

According to debtor's federal income tax return, her adjusted gross income for the year 2002 was $30,566; her taxable net income was $14,666. Debtor's son, now thirteen years old, lives with debtor. Her daughter, now seventeen years old, lives with relatives in Mexico.

According to debtor, her present gross income from her job is $2,520 per month; her net monthly income is $1,908.88. She further asserts that her monthly living expenses, which include a mortgage payment in the amount of $544 and utility costs totaling $330 and an auto loan payment of $180, total $1,905.12, only $3.76 less than her monthly net income.

Plaintiff commenced this adversary action on November 26, 2002, seeking a determination that debtor's obligation to pay the $17,500 mortgage against the property

he owns is excepted from discharge by § 523(a)(15) of the Bankruptcy Code.

The matter was tried on July 24, 2003, at which time plaintiff and debtor were given an opportunity to offer evidence on the issues in the case.

## — DISCUSSION —

Debtor denied at trial that she ever orally agreed to pay *both* of the above mortgages, including the $17,500 mortgage against plaintiff's present residence for which he alone is personally liable. As was noted, the state court previously found that debtor had so agreed and entered a judgment against her.

No consideration will be given to this denial to the extent that the denial is relevant to deciding this case. She is collaterally estopped from denying that she so agreed.

Collateral estoppel applies when determining whether a particular debt is dischargeable or not. *Grogan v. Garner*, 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991). Even though exclusive jurisdiction to determine whether a particular debt is dischargeable lies with the bankruptcy court, collateral estoppel may prevent relitigation of issues relevant to the dischargeability of the debt. *Gober v. Terra + Corp. (Matter of Gober)*, 100 F.3d 1195, 1201 (5th Cir.1996).

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires a federal court to accord judicial proceedings brought in a state tribunal the "same full faith and credit ... as they have by law or usage in the courts of such State". This provision requires a federal court to defer to the law of preclusion of the state in which a judgment was rendered. It directs a federal court to apply the rules of preclusion that apply in the state in which the judgment was rendered. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985).

This doctrine applies where collateral estoppel, also known as issue preclusion, is involved. A federal court must give a state-court judgment the same preclusive effect as it would have under the law of the state in which it was rendered. *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). Because the judgment of June 27, 2002, was rendered by a Pennsylvania state court, we must apply the doctrine of issue preclusion as articulated by Pennsylvania courts to determine whether the above finding of the state court that debtor orally agreed to pay the mortgage against the property owned by plaintiff has preclusive effect here.

Collateral estoppel applies under Pennsylvania law when: (1) the issue decided in a prior case is identical to the issue presented in a later case; (2) there was a final judgment on the merits in the prior case; (3) the party against whom the doctrine is asserted was a party in the prior case or is in privity with a party who was; (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination made in the prior proceeding was essential to the judgment rendered therein. *City of Pittsburgh v. Zoning Board of Adjustment*, 522 Pa. 44, 55–56, 559 A.2d 896, 901 (1989).

Each of these requirements is satisfied in this instance. The same issue was raised and was decided unfavorably to debtor in the state court decision and order. It found that debtor had agreed to pay both mortgages if the former marital residence was conveyed to her alone. Said

finding was essential to the judgment of June 27, 2002, rendered by the state court. Moreover, the order was a final judgment on the merits. Debtor was the defendant in the state court action and had a full and fair opportunity to litigate the issue in that proceeding.

The ultimate issue in this case is whether the debt owed to plaintiff by debtor is excepted from discharge by § 523(a)(15) of the Bankruptcy Code, which provides in part as follows:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—. . . .

(15) not of the kind in paragraph (5) that is incurred by the debtor . . . in the course of a divorce . . . or other order of court of record . . . unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . .; or

(B) discharging such a debt would result in a benefit to the debtor that outweighs the detrimental consequences to a . . . former spouse . . . of the debtor

11 U.S.C. § 523(a)(15).

██ Section 523(a) excepts eighteen categories of debt owed by an individual debtor from a discharge granted under § 727 of the Bankruptcy Code.

██ Section 523(a)(5), for instance, excepts from discharge any debt owed to a present or former spouse or child of the debtor incurred in connection with a separation agreement, divorce decree, or other order of a court of record that is in the nature of alimony, maintenance, or support of such spouse or child. 11 U.S.C. § 523(a)(5).

As a general matter, § 523(a)(15) excepts from discharge any debt owed to a former spouse that is "not of the kind" within the scope of § 523(a)(5). This general rule, however, is subject to two exceptions found at § 523(a)(15)(A) and (B), either of which suffices to render the debt dischargeable after all. If neither of these subsections applies, in other words, the debt is excepted from discharge pursuant to the general rule articulated at § 523(a)(15).

██ A creditor objecting to the discharge of a debt in accordance with § 523(a) generally has the burden of proof in the matter. It must do so by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 659–61, 112 L.Ed.2d 755 (1991).

There is a difference of opinion among courts concerning whether § 523(a)(15) is an exception to this general rule.

Numerous courts, probably a majority, have held that the creditor must prove that the debt in question: (1) does not fall within the purview of § 523(a)(5); and (2) was incurred in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record. If the creditor so establishes, the burden of proving that the debt falls within at least one of the exceptions found at subsections (A) and (B) shifts to the debtor. *E.g., In re Ballard,* 69 Fed.Appx. 145, 150 (4th Cir.2003); *In re Myrvang,* 232 F.3d 1116, 1121 (9th Cir.2000); *Matter of Crosswhite,* 148 F.3d 879, 887 (7th Cir.1998); and *Gamble v. Gamble (Matter of Gamble),* 143 F.3d 223, 226 (5th Cir.1998).

Other courts have held that the creditor has the burden of proving *all* the elements of § 523(a)(15). *E.g., Konick v. Konick (In re Konick),* 236 B.R. 524, 526–27 (1st Cir. BAP 1999); *Marquis v. Marquis (In re Marquis),* 203 B.R. 844, 852 (Bankr.

D.Me.1997); and *Dressler v. Dressler (In re Dressler)*, 194 B.R. 290, 304 (Bankr. D.R.I.1996).

At least one court has held that the creditor bears both the burden of production and the burden of persuasion with respect to the elements of § 523(a)(15) and § 523(a)(15)(B) but not with respect to § 523(a)(15)(A). The debtor has the burden of production with respect to § 523(a)(15)(A) while the burden of persuasion lies with the creditor. *Garrity v. Hadley (In re Hadley)*, 239 B.R. 433, 437 (Bankr.D.N.H.1999).

We need not decide which, if any, of these diverging positions to adopt in this case. The outcome is the same regardless of the approach taken.

The initial threshold requirement of § 523(a)(15) is satisfied in this instance. It is not disputed that the obligation debtor owes to plaintiff is "not of the kind" found at § 523(a)(5). It is not in the nature of alimony to, maintenance for or support of plaintiff. Plaintiff intended the obligation to be an aspect of equitable distribution of their marital assets.

The second threshold requirement also is satisfied here. Plaintiff and debtor agreed in their written marriage settlement agreement dated January 25, 1999, that they would sell the marital residence. Proceeds realized from the sale would be used first to satisfy the mortgage against the marital residence. Any remaining proceeds then would be used to pay off the mortgage against the property owned by plaintiff in which he resided after their separation. Debtor's obligation as set forth in this provision was incurred "in the course of a divorce".

After January 25, 1999, but prior to April 26, 1999, plaintiff and debtor orally agreed to replace this provision of the marriage settlement agreement with another. Plaintiff agreed to convey his interest in the marital residence to debtor, who in return agreed to pay off the mortgage against the marital residence as well the mortgage against the other property which was owned by plaintiff and in which he resided.[1]

This oral modification was intended by plaintiff and debtor to replace the above provision of their written marriage settlement agreement and "relates back" to their divorce. If debtor's obligation as set forth in the marriage settlement agreement was incurred "in the course a divorce", it follows by parity of reasoning that debtor's obligation as set forth in the oral modification also was "incurred in the course of a divorce".

It follows from the preceding that debtor's obligation to pay off the mortgage against the property owned by plaintiff and in which he presently resides is excepted from discharge *unless* at least one of the exceptions found at § 523(a)(15)(A) and (B) applies to this case.

■ The exception found at § 523(a)(15)(A) does not apply here. Contrary to what debtor asserted at trial, she has the ability to pay the debt she owes plaintiff from income or property that is not reasonably necessary for her support and the support of her minor son.[2]

---

1. We previously determined that debtor is collaterally estopped from denying in this case that she orally agreed to pay off the mortgage against the property owned by plaintiff and in which he resides.

2. The only dependent debtor supports is her minor son. Debtor's minor daughter lives with relatives in Mexico. Although debtor occasionally sends money to her daughter, debtor's relatives in Mexico provide her daughter's support.

According to debtor's bankruptcy schedules, she had equity in her residence as of the bankruptcy filing in the amount of $17,505, the amount she owes plaintiff. She claims that her residence has a value of $75,000 and that the amount of the mortgage against the residence was $54,495. If anything, it is likely that as of today, more than a year after her bankruptcy filing, the amount of her equity in the property exceeds $17,500.

There is no indication in the record indicating that debtor has not remained current on this mortgage obligation. She certainly has an incentive to remain current, as the mortgagee well might foreclose on the property if she does not. Considering the amount of equity debtor has in her own residence, she should be able, if she so chose, to take out a second mortgage against it in an amount sufficient to pay her debt to plaintiff.

Debtor offered evidence at trial that her monthly net income from her employment presently is $1,908.88 and that her present monthly living expenses total $1,905.12, a mere $3.76 less than her monthly net income. According to debtor, her mortgage payment is $544 per month. Utilities cost another $330 per month. These two items alone comprise nearly forty-six percent of debtor's monthly net income as well of her alleged monthly living expenses. From this debtor would have us infer that she is not able to pay her debt to plaintiff. Even if we assume that these numbers are accurate, we decline to infer this.

Debtor lives in her residence with a male companion, who paid for the addition of a deck behind the house and for an above-ground swimming pool.

Evidence offered at trial does not indicate whether debtor's live-in companion is or is not contributing towards household expenses. Our conclusion is the same whether he is or is not.

If he is contributing, then debtor is not paying by herself the full amount of the expenses she claims. The precise amount of his contribution, if any, is not known. Even if, however, her companion contributes the relatively nominal sum of only $185 per month, debtor would have sufficient disposable income with which to pay the mortgage against the house owned by plaintiff and in which he lives.

The conclusion is the same if debtor's live-in companion is not contributing towards household expenses. If he paid for a deck and a swimming pool, this leads us to conclude that debtor's companion in all likelihood has the wherewithal to contribute at least $185 per month towards household expenses.

If debtor's companion is not contributing when he evidently is able to do so, we are left to wonder why. Even if he is not, we are not willing to accept at face value debtor's assertion that *her* monthly living expenses total $1,905.12 when another adult, to whom debtor is not related, is living with her for free.

Now that she is in bankruptcy, debtor's legally binding obligation to her former spouse should take priority over her munificence to her live-in boyfriend. We can think of no good reason why plaintiff should have to subsidize any arrangement debtor has with her boyfriend. At the very least, we will "discount" debtor's monthly expenses by an amount that makes it possible for her to pay $185 per month on the mortgage against the house which plaintiff owns and in which he presently resides.

Debtor cannot have it both ways. That is to say, she cannot get out from under the debt owed to plaintiff while at the same time allowing her boyfriend to live with her without contributing something towards household expenses. It would be

unconscionable and an affront to what is meet and just were we to conclude otherwise.

■ Finally, we conclude that the exception to the general rule set forth in § 523(a)(5) which is found at § 523(a)(15)(B) also does not apply to this case. The benefit debtor would enjoy does *not* outweigh the detriment plaintiff would suffer if the debt in question were discharged. To the contrary, the detriment plaintiff would suffer far outweighs the benefit debtor would enjoy.

We have determined that debtor is able to make payments of $185 per month towards the mortgage against the property owned by plaintiff and in which he now resides. If the debt were discharged, debtor would be relieved of this obligation and would have that much more disposable income.[3]

The detriment plaintiff would suffer, by contrast, would considerably outweigh this modest benefit to debtor.

It is doubtful that plaintiff could afford for very long to continue making monthly payments of $185 towards the property he owns even though his brother lives with him and helps out with the bills. Plaintiff would have only $510 per month left over with which to met his own living expenses if he has to continue making the mortgage payments himself.

If plaintiff is left to continue making these mortgage payments himself, it is likely that he eventually will not be able to do so for long and that the mortgagee would foreclose on the property. We have determined that the aggregate value of the property owned by plaintiff approximates $165,000. While plaintiff presumably could liquidate one of his other properties to satisfy the mortgage against the property in which he resides, this would result in a reduction in the rental income upon which he depends to support himself and would result in the loss of one of his major assets. Such detriment substantially outweighs the nominal benefit of debtor's having an additional $185 per month (or less) in disposable income.

Having determined that neither of the exceptions found at § 523(a)(15)(A) or (B) is applicable in this case, we conclude that the debt owed to plaintiff by debtor is excepted from discharge by § 523(a)(15) of the Bankruptcy Code.

---

**3.** The amount of these monthly payments is based on a mortgage plaintiff granted prior to July of 1997, when he and debtor purchased their marital residence. Although the record does not indicate what the interest rate was when plaintiff granted the mortgage, it almost certainly was considerably greater than it is at present. In that event, debtor most likely would have to pay *less* than $185 per month if she borrowed the money needed to pay off her debt to plaintiff and granted the lender a mortgage against her residence.